ELIJAH R. SCHOONMAKER, Appellant, *v.* WILLIAM HOYT et al., Respondents.

1. EXCEPTION IN GRANT. By an exception in a grant, the thing excepted is taken wholly out of the grant, and is no parcel of the thing granted; that which is excepted out of the general words is in the same case as if it had never been touched.

2. MERGER OF CONTRACT IN DEED. The general rule is that where there is a contract for the sale of land, by the terms of which a deed is to be subsequently given, the delivery and acceptance of the deed merges the contract in it, and the contract is superseded by the deed as to such provisions as are covered by the conveyance made in pursuance of its terms, and remains in force only as to any other provisions it may contain.

3. GRANT OF GROWING HEMLOCK BARK — CONSTRUCTION OF INSTRUMENT. P., who was the owner of certain lots of hemlock land, entered into a contract with M., who owned certain other lots, whereby the latter sold and transferred to P. the hemlock bark then growing on the lots owned by M., with the right of entry for removing it, in consideration of which P. agreed to sell and convey to M. the lots owned by P., but excepting and reserving to himself, his heirs and assigns, all the hemlock bark thereon, with the right of entry for removing it. Thereafter P. executed and delivered to M. a deed in accordance with the contract, and which contained the same exception and reservation. P. subsequently assigned the M. contract to one S., by an assignment which described the contract as one between P. and M. "for the sale and removal from the lands therein described of the hemlock bark thereon." *Held*, that by the assignment S. acquired title only to the bark sold and transferred to P. by the contract, namely, the bark on the lots owned by M. at the time of the making of the contract, and that he did not acquire any interest in the bark on the lots conveyed by P. to M. retained by P. by force of the exception thereof from the conveyance to M., as against a third party to whom P. had conveyed the title to such bark after the assignment.

*Schoonmaker* v. *Hoyt* (72 Hun, 407), reversed.

(Argued January 27, 1896; decided February 18, 1896.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 3, 1893, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Henderson* for appellant. The referee properly refused to find that the Palens did transfer the hemlock bark to Shults. (*Borst* v. *Empie*, 5 N. Y. 33.)

*Charles H. Brown* for respondents. The referee was requested to find that the Palens intended to pledge to Shults, and Shults intended to receive the title to the bark as a security for his claim, and his refusal to so find presented such an error as to call for reversal of the judgment. (*Bridger* v. *Pierson*, 45 N. Y. 604; *Roe* v. *Vingut*, 117 N. Y. 212; *Craig* v. *Wells*, 11 N. Y. 320; 3 Washb. on Real Prop. 464; 4 Wait's Act. & Def. 227; *Burr* v. *Mills*, 21 Wend. 293; *Ives* v. *Van Auken*, 34 Barb. 566; *Langdon* v. *Mayor, etc.*, 6 Abb. [N. C.] 321; *Borst* v. *Empie*, 5 N. Y. 33; Wood on Landl. & Ten. 247.) Plaintiff was not entitled to recover. (*Langdon* v. *Mayor, etc.*, 6 Abb. [N. C.] 321; *Borst* v. *Empie*, 5 N. Y. 33; *Burr* v. *Mills*, 21 Wend. 293; *McIntyre* v. *Barnard*, 1 Sandf. Ch. 52; *Marvin* v. *Brewster I. M. Co.*, 55 N. Y. 548; *Warren* v. *Leland*, 2 Barb. 619; *Vorebeck* v. *Roe*, 50 Barb. 305; *Goodyear* v. *Vosburgh*, 57 Barb. 247; *L. F. Co.* v. *L. G. & F. Co.*, 82 N. Y. 476; *Lyon* v. *Wing*, 20 Wkly. Dig. 144; *Pierrepont* v. *Barnard*, 6 N. Y. 286; *Bennett* v. *Scutt*, 18 Barb. 347; *Hobbs* v. *Wetherwax*, 38 How. Pr. 385; *Killmore* v. *Howlett*, 48 N. Y. 569; *Gould* v. *Ellery*, 39 Barb. 163; *Green* v. *Hart*, 1 Johns. 580; *Langdon* v. *Buel*, 9 Wend. 80; *Parmelee* v. *Dann*, 23 Barb. 461; *Bank of R.* v. *Jones*, 4 N. Y. 497; *City Bank* v. *R., W. & O. R. R. Co.*, 44 N. Y. 136; *Paddon* v. *Taylor*, 44 N. Y. 371; *C. Co. Nat. Bank* v. *Daniels*, 47 N. Y. 631; *Runyan* v. *Mersereau*, 11 Johns. 534; *Gillett* v. *Campbell*, 1 Den. 520.) To reverse the General Term would deprive the defendants and respondents of a substantial right, for which no possible relief can be given. (*Chapman* v. *Comstock*, 134 N. Y. 509; *Mickee* v. *W. A. W. M. & R. M. Co.*, 144 N. Y. 613; *Whitman* v. *Foley*, 125 N. Y. 651.)

MARTIN, J. This is an action to recover the value of a large quantity of hemlock bark to which the plaintiff claimed

title, that was taken by the defendants and appropriated to their own use. The only question involved upon the trial or upon this appeal relates to the title to the bark thus taken.

On June 24, 1871, Arthur Palen, Edward Palen and Gilbert W. Palen were the owners in fee of about thirteen hundred acres of land upon which there was standing a large number of hemlock trees, the bark upon which is the subject of this controversy. They obtained their title through a deed from Jarius B. Strong, made in pursuance of a contract entered into June 6, 1869. On June 3, 1886, Edward Palen and Arthur Palen, individually and as surviving partners and executors of the last will and testament of Gilbert W. Palen, deceased, and Caroline Palen conveyed to the plaintiff the bark on all the trees down and standing upon the premises mentioned, with the right of ingress and egress to remove it; all rights of action they had against any parties for cutting, removing or interfering with such bark, and all the bark which might have been peeled or taken from the trees on said land. On August 23, 1886, James F. Palen also executed to the plaintiff a similar deed. These deeds were recorded in the office of the clerk of Cattaraugus county, where the land was situated. The first was recorded June 9, 1886, and the other October 11, 1886. The grantors in these conveyances were the proper parties to convey the rights sought to be transferred, and had authority to make them. Thus the plaintiff acquired all the title that the Palens had to the bark in question, which was an absolute one, unless the defendants possessed a prior title which was superior to that acquired by the plaintiff. Therefore, it becomes necessary to examine the facts relating to the title claimed by the defendants.

The proof relating to that question is undisputed. It discloses that on December 8, 1869, the Palens entered into a contract with Job Moses, whereby the latter sold and transferred to them the bark then growing on all the hemlock trees upon certain lots owned by him and described therein, containing about eighteen hundred and seventy-six acres, with the right of ingress and egress for the purpose of removing it,

in consideration of which the Palens agreed to sell and convey to Moses the several lots of land owned by them, but excepted therefrom and reserved to themselves, their heirs and assigns, all the hemlock bark thereon, with the right of ingress and egress for the purpose of peeling and removing it. By this contract, the Palens acquired a right to all the hemlock bark upon the Moses lots, and agreed to transfer to Moses the title to the lands then belonging to them, excepting and reserving to themselves the title to all the hemlock bark thereon and the right to enter upon the premises to peel and remove it. On January 10, 1873, the Palens performed this contract upon their part by executing and delivering to Moses deeds of the premises they agreed to convey to him, which contained the same exception and reservation as to the bark and its removal as were contained in the original contract.

On February 1, 1873, to secure Jackson S. Shults from any loss or damage he might sustain by reason of having executed a bond for their accommodation, the Palens assigned to him the Moses contract. So far as it related to this contract, the assignment was of " one contract between Job Moses of the first part and A., E. and G. W. Palen of the second part, dated December 8th, 1869, for the sale and removal from the lands therein described of the hemlock bark thereon." This assignment was prior to the transfers by the Palens to the plaintiff, and if it effected a transfer of the bark in question, the defendant's title is superior to that of the plaintiff. Consequently the real question involved upon this appeal is whether the assignment by the Palens to Shults transferred to the latter the title to the bark upon the Palen lands, as it is conceded that the defendants have acquired all the title which Shults had under and by virtue of that assignment.

As it seems but reasonable to suppose that the Palens intended to assign to Shults only such title and interest as they acquired under the Moses contract, it becomes material to ascertain what they thus acquired. When we examine the Moses contract, we find that all the Palens actually acquired under it was the bark on the Moses lots, with the right to

enter thereon and remove it. None of the bark on the Palen lots was transferred to them. They already owned that. It was excepted in that portion of the contract by which they agreed to transfer their lots to Moses, so that they retained under their former title whatever interest continued in them and did not acquire any title by reason of any provision contained in that contract. "By an exception, the thing excepted is taken wholly out of the grant, and is no parcel of the thing granted. That which is excepted out of the general words is in the same case as if it had never been touched." (*Burr* v. *Mills*, 21 Wend. 290, 293; *Craig* v. *Wells*, 11 N. Y. 315, 320; *Bridger* v. *Pierson*, 45 N. Y. 601; *Marvin* v. *Brewster Iron Mining Co.*, 55 N. Y. 538, 548.) It is true that if the Palens had not excepted the bark from the sale, it would have passed to Moses. But, having done so, they acquired no title through or under him, but simply retained the title which they already had. If a third person had removed this bark, and an action had been brought by the Palens to recover its value, they could not have made title under the Moses contract, as that granted them nothing. They would have been compelled to establish their title through their deed from Strong. The Moses contract would, at most, have shown that while they sold the land upon which the trees stood, they had retained the title to the bark and the right to remove it. Therefore, the Palens' title to the bark rested upon their deed from Strong, and not upon the Moses contract.

Moreover, on January 10, 1873, the Palens fulfilled their part of the contract by giving to Moses deeds of the premises they had contracted to sell him, which contained the same provisions as to the bark and its removal as were in the original contract. Thus the portion of the Moses contract which related to the land conveyed was fully executed by giving the required deed before the assignment by the Palens to Shults. The general rule seems to be that where there is a contract for the sale of land, by the terms of which a deed is to be subsequently given, the delivery and accept-

ance of the deed merges the contract in it, and the contract is superseded by the deed as to such provisions as are covered by the conveyance made in pursuance of its terms, and remains in force only as to any other provisions it may contain. (*Witbeck* v. *Waine*, 16 N. Y. 532; *Murdock* v. *Gilchrist*, 52 N. Y. 242, 246; *Wilson* v. *Randall*, 67 N. Y. 338; *Disbrow* v. *Harris*, 122 N. Y. 362, 365.) Therefore, as at the time of the assignment by the Palens to Shults the provisions of the contract which related to the Palen land had been fully performed by the execution of deeds, which superseded that part of the contract, Shults could have taken nothing by his assignment, especially in view of the fact that under that portion of the contract the Palens acquired no title to the bark in question. Manifestly, that is the case unless the language of the assignment is such as to plainly indicate that the parties intended to convey to Shults not only the bark upon the Moses property, but also that upon the land transferred by the Palens to Moses.

An examination of the assignment discloses that it was merely a transfer to Shults of the title and interest of the Palens in the contract between Moses and themselves, for the sale and removal of the hemlock bark from the lands therein described. The only provision for the sale and removal of bark related to the Moses lands, the bark upon which he transferred to the Palens. The words used in the assignment were apt and proper for the transfer by the Palens to Shults of their title to the hemlock bark upon the Moses premises, but insufficient to include a transfer of that which the Palens had acquired under their deed from Strong, and to which they retained the title and right of removal.

A fair reading of the language employed seems to clearly indicate that the Palens intended to transfer to Shults only such interest and title as they acquired under and by virtue of the Moses contract. The contract was described in the assignment as one between Moses and the Palens for the sale and removal of the hemlock bark from the lands therein described, and as there was in that contract no provision for

the sale and removal of any bark except that upon the Moses land, it is quite obvious that the assignment transferred only the bark on the Moses lots.

This assignment does not purport to convey to Shults any other interest than that acquired by the Palens under and by virtue of the contract of December 8, 1869. As we have already seen, the only right they acquired by that contract was to the bark on the Moses property, and the Moses contract, except as to that right, had already been superseded by deeds from the Palens to Moses. Under these circumstances, I think it is quite manifest that the defendants obtained no title to the bark upon the Palen lots under the assignment to Shults and their acquisition of his interest.

The respondents contend that it was the intention of the parties to the assignment to transfer to Shults the bark remaining upon the premises sold by the Palens, as well as that upon the Moses lots. In the construction of contracts or statutes the intention of the parties or legislature is to be sought in the words and language employed, and if the words are free from ambiguity and express plainly the purpose of the instrument, there is no occasion for interpretation. Contracts or statutes are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. Courts cannot correct suspected errors, omissions or defects, or by construction vary the contracts of parties. If the words employed convey a definite meaning, and there is no contradiction or ambiguity in the different parts of the same instrument, then the apparent meaning of the instrumnt must be regarded as the one intended. (*McCluskey* v. *Cromwell*, 11 N. Y. 593, 601; *Johnson* v. *Hudson River R. R. Co.*, 49 N. Y. 455, 462; *Benton* v. *Wickwire*, 54 N. Y. 226.) In construing a written instrument it may be read in the light of surrounding circumstances in order to more perfectly understand the intention of the parties, and when it is thus discovered it should control.

When we read this assignment, together with the contract assigned, in the light of the circumstances surrounding the parties and this transaction when it occurred, and accord to the words employed their obvious and natural meaning, we think the apparent meaning of the assignment must be regarded as the one intended. It would be a forced and unnatural construction of the words employed in the assignment to hold that its purpose was to transfer to Shults an interest in bark which was not acquired under the contract, but held under a different and distinct title, especially where the provisions of the contract, which in any way related thereto, had been fully performed and superseded by the previous acts of the parties. We are of the opinion that the defendants acquired no title to the bark in question, but that it belonged to the plaintiff, and that the judgment awarded by the referee was proper, and should be affirmed.

The judgment of the General Term should be reversed and the judgment of the trial court affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment accordingly.