MICHAEL J. DADY, Respondent, *v.* JOHN H. O'ROURKE,
Appellant, Impleaded with Another.

EVIDENCE — WHEN PAROL PROOF INADMISSIBLE IN AN ACTION FOR
RESCISSION TO EXPLAIN OR CONTRADICT WRITTEN CONTRACT.  A written
contract to sell all of one's stock in a corporation for a specified sum, con-
taining an agreement that the stock holdings to be turned over amounted
to three-fifths of the capital, is not fully performed by the vendor's deliv-
ery of a less number of shares, although they constituted his entire hold-
ings, in such a manner as to entitle him upon the vendee's default in pay-
ment to maintain an action to rescind the contract, and parol evidence
tending to show that the plaintiff intended to sell and the defendant to

buy only such stock as was held by the former, irrespective of the amount, is inadmissible, and will not justify a finding of complete performance.

*Dady* v. *O'Rourke,* 61 App. Div. 529, reversed.

(Argued October 21, 1902; decided November 18, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 3, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The complaint should have been dismissed because, by the express terms of the contract, the plaintiff was to deposit three-fifths of the entire capital stock of the Gravesend Hygienic Ice Company, amounting to 720 shares, whereas, under the express allegations and admissions in the pleadings, it appears that he only deposited 687 shares, and was, therefore, himself in default. (*Holmes* v. *Hubbard,* 60 N. Y. 183 ; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425 ; *C. S. R. R. Co.* v. *T. T. S. R. Co.,* 149 N. Y. 51 ; *Schroeder* v. *Frey,* 114 N. Y. 266 ; *Hoffman* v. *Æ. Ins. Co.,* 32 N. Y. 405 ; *White* v. *Hoyt,* 73 N. Y. 504 ; *Gillet* v. *Bank of America,* 160 N. Y. 549 ; *Oakley* v. *Morton,* 11 N. Y. 25 ; *Day* v. *Town of New Lots,* 107 N. Y. 148 ; *Romeyn* v. *Sickles,* 108 N. Y. 650 ; *La Chicotte* v. *R. R. & E. Co.,* 15 App. Div. 380.) The court erred to the prejudice of the defendant in admitting parol evidence against his objection as to the negotiations between the parties prior to the acceptance of the written agreement. (*Sherman* v. *D., L. & W. R. R. Co.,* 106 N. Y. 542 ; *Wilson* v. *N. E. R. R. Co.,* 56 App. Div. 570 ; *Marsh* v. *McNair,* 99 N. Y. 174 ; *Saunders* v. *Cooper,* 115 N. Y. 279 ; *Walton* v. *A. Ins. Co.,* 116 N. Y. 317 ; *United Press* v. *N. Y. P. Co.,* 164 N. Y. 406 ; *House* v. *Walch,* 144 N. Y. 418 ; *Corse* v. *Peck,* 102 N. Y. 513.)

*Charles W. Church, Jr.,* for respondent. The contract did not require the plaintiff to sell three-fifths of all of the stock

of the company; on the contrary, the plaintiff claims that the contract is clearly ambiguous, and that, therefore, it was proper to show the surroundings of the same to show what was intended. (*United Press* v. *N. Y. P. Co.*, 164 N. Y. 406; *Corse* v. *Peck*, 102 N. Y. 513.)

Parker, Ch. J.  Plaintiff and defendant on October 30, 1899, entered into the following contract:

"In consideration of the sum of one dollar ($1) to me in hand paid, the receipt whereof is hereby acknowledged, I hereby give unto John H. O'Rourke, of the Borough of Brooklyn, City of New York, an option to purchase all my right, title and interest in the property and assets of the Gravesend Hygienic Ice Company, including the stock now held and owned by me, either in my name or in the name of any person or persons for my benefit, said stockholdings amounting to three-fifths of the entire capital stock of said company, for the sum of $30,000, to be paid on or before the 1st day of December, 1899, on which day this option shall expire in default of payment being made.  Upon the payment of said $30,000, on or before the 1st day of December, I agree to make assignment in blank of my stock in said Gravesend Hygienic Ice Company, and also to procure the resignation of the present officers and directors of said company, and to deposit said stock and resignation with the Hamilton Trust Company of Brooklyn, New York City, in escrow, the same to be retained by them and delivered to said O'Rourke upon the payment by him of $30,000.  I hereby further agree that at the present time there are no claims or debts or liens of any description against the property or effects of the Gravesend Hygienic Ice Company except two mortgages of $30,000 each.  And I hereby further agree that, upon the consummation of the sale hereby contemplated, that there shall be no liens upon the property of said company except the two mortgages above referred to, and that the company shall be free from debts of all description except said two mortgages.  I further agree that I will sell all my

right, title and interest to the dock property at the foot of 21st Street for the sum of $1,500."

Plaintiff, as we must assume from this record, performed all the promises on his part except, as appears by the pleadings, that he deposited with the Hamilton Trust Co. only 687 shares instead of three-fifths — 720 shares — of the capital stock. Defendant deposited with said trust company $30,000, but he notified it not to pay the money to plaintiff until he had deposited 720 shares. Thereupon plaintiff brought this action to rescind the contract, claiming in his complaint that he had made full performance of the contract, and defendant had broken the contract on his part by notifying the trust company not to pay the moneys deposited to plaintiff. The trial court found as a fact that plaintiff has performed his part of the agreement according to its spirit and intent, and that as defendant refuses to perform his part plaintiff had the right to judgment of rescission.

These findings having been unanimously affirmed by the Appellate Division, we are now to inquire whether any errors were committed to the prejudice of defendant in admitting parol evidence against his objection as to the negotiations between the parties prior to the acceptance of the written agreement. The evidence objected to was as follows:

" Q. At the time you had this conversation about selling your stock to Mr. O'Rourke, at the time of making the contract, what was said? Objected to on the ground that oral communications are merged in the contract. The Court: What is the purpose of it? Mr. Church: To show here is a clause which is contradictory. The Court: To make patent what is latent; that it meant what he had rather than exact proportion? Mr. Church: Yes, sir. The Court: I will take the proof so far as it has to do with that part of the contract. Defendant excepts. Q. At the time these negotiations were had with Mr. O'Rourke leading up to the signing of this contract what was said about the amount of stock you had, as between you and Mr. O'Rourke? What was said about your sale between you and Mr. O'Rourke? Objected

to; objection overruled; defendant excepts. A. Mr. O'Rourke asked me would I sell my interest for one hundred thousand dollars with his interest; that he had made an arrangement in New York that we should sell the company for one hundred thousand dollars, of which I was to get sixty thousand, or three-fifths, and he the other two-fifths. Q. What was said about the amount of stock you had? A. Mr. O'Rourke came to me with a paper, and asked me to sign a paper, fifty dollars paid in hand to the party of the second part; I said, What is the fifty dollars for? He said, That is the amount they gave me; I said, I never saw a part like that in it; he said, We will get forty thousand dollars cash, of which you are to get three-fifths, which is twenty-four thousand dollars, and I get two-fifths, which is sixteen thousand dollars, and we each keep our mortgages; I said no. Q. What was said by you to O'Rourke about what you would sell him when you signed this contract? A. I sold my interest in the company. Q. Was it what O'Rourke said to you, that he got all the balance which you did not get? Objected to as leading. Q. What did he say about that? A. There was not any contest about the stock. Q. But what did he say? A. He did not say anything, only he said, I will get the endorsement on the back of these two certificates, Mr. Cox and Mr. Kearney's, I will get them; there was not any contest about the stock at all."

Without this testimony, and other evidence in the record tending in the same direction, the trial court could not well have found complete performance on the part of plaintiff, for the contract provides for a sale by the plaintiff of "all my right, title and interest in the property and assets of the Gravesend Hygienic Ice Company, including the stock now held and owned by me, either in my name or in the name of any person or persons for my benefit, said stock holdings amounting to three-fifths of the entire capital stock of said company."

It is urged on the part of plaintiff that his part of the contract would have been performed by delivering to the trust company all his stock, whether the number of shares was 687 or a much less number, so that if the amount actually

owned and held by him had been one-fifth instead of three-fifths, the turning over of that amount to the trust company would have constituted performance on his part. But we do not so understand the contract. As we read it, he not only agreed to turn over all his stock, but also agreed that the stock holdings thus to be turned over amounted to three-fifths of the entire capital.

One of the rules to be applied in the construction of contracts is that they shall be construed so that all parts may stand together if they are capable of such an interpretation. A covenant in large and general terms may be restrained and narrowed where the intent to restrain and narrow or qualify is apparent from other parts of the same instrument. Thus in *Holmes* v. *Hubbard* (60 N. Y. 183), upon the dissolution of a partnership between D. & H., H. purchased D.'s interest and gave him a bond signed by himself and another conditioned to indemnify D. "from all and singular the debts and liabilities" of the firm. At the end of the formal part of the bond were added the words "Liabilities as per schedule of indebtedness hereto attached." This court held that the general terms of the condition were limited and qualified by the added clause; and that the obligors were not liable for a copartnership debt not mentioned in the schedule. That case is in point here and should be controlling.

Still another rule of construction is that the intention of the parties is to be sought in the words and language employed, which are to be read and understood according to their natural and obvious import. (*Schoonmaker* v. *Hoyt*, 148 N. Y. 425.)

Applying these rules to the contract before us the conclusion must be reached, we think, that plaintiff agreed to sell his holdings in the ice company, and agreed that they amounted to three-fifths of the entire capital.

Now, it must be borne in mind that this is not an action to reform a contract so that it shall voice the agreement the parties intended to make. On the contrary, it is based on the contract *as it was written* with the claim of full performance

on the part of plaintiff, and, therefore, cannot be maintained by evidence that the contract was intended to be a different one, for it is the general rule that when an agreement is reduced to writing, it, as between the parties, merges and overcomes all prior or contemporaneous negotiations upon the subject, and that oral evidence is not admissible to vary, explain or contradict its terms, for the writing is conclusively presumed to contain the whole engagement of the parties. (*Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298.) There are certain exceptions to the rule referred to in that case, but as this case is not within any of them they need not be referred to. Other authorities to the same effect are *Marsh* v. *McNair* (99 N. Y. 174); *Sanders* v. *Cooper* (115 N. Y. 279); *Walton* v. *Agricultural Ins. Co.* (116 N. Y. 317); *United Press* v. *N. Y. Press Co.* (164 N. Y. 406).

The evidence was apparently admitted upon the view that the contract was ambiguous and hence that the proof of the facts and surrounding circumstances was admissible in order to aid the court in arriving at the intention of the parties, but as we read it it is clear and unambiguous, and, therefore, to be construed according to its language.

Now, the evidence admitted against the objection of the defendant, some of which we have quoted, was prejudicial to defendant, tending to show that it was the intent of the parties that plaintiff should sell only his interest in the stock of the company, whatever it might be, and as the court found that plaintiff had fully performed his part of the agreement it must, in view of our construction of the contract, have been based upon the evidence adduced outside of the contract tending to show that plaintiff only intended to sell and defendant to buy such of the stock of the company as was held and owned by plaintiff.

It follows that the judgment should be reversed, and a new trial granted, with costs to abide the event.

Gray, O'Brien, Bartlett, Haight and Vann, JJ., concur; Martin, J., not voting.

Judgment reversed, etc.