JOSEPH R. KINNEY, Appellant, *v.* D. H. McBRIDE & COMPANY, Respondent.

*Bill of sale of chattels — supplemental contract, executed the same day, for further transfer containing a covenant by vendor not to engage in like business — it is an independent covenant — its breach gives an independent cause of action or a counterclaim—it is not a defense to the enforcement of the bill of sale — oral evidence to explain a writing — practical construction — contract of employment made subsequent to the bill of sale.*

The firm of M. B. Diepenbrock & Co., on October 30, 1900, executed to D. H. McBride & Co., a corporation, a bill of sale, providing that, in consideration of the sum of $3,800, of which $75 had been paid, the firm sold to the corporation "all the goods, wares, merchandise, fixtures, supplies, machinery, etc., which appear in the annexed schedule." The schedule contained a number of items ranging from a few cents to over $100, aggregating exactly $3,800.

Subsequently, and on the same day, the parties entered into a further agreement, reciting the making of the bill of sale and the intention of the firm to convey, and of the corporation to acquire, all the partnership property including the good will of the business, with the exception of the book accounts.

It also recited, "WHEREAS, the said parties of the first part and said parties of the second part desire to set forth more fully the manner in which said consideration of Thirty-eight hundred dollars shall be paid as well as the conditions of such payments.

"*Now, therefore,* in consideration of the sum of Thirty-eight hundred ($3,800.00) Dollars lawful money of the United States of which seventy-five dollars are to them in hand paid at or before the ensealing or delivery of these presents; the balance to be paid in manner and form hereinafter set forth and *for other good and valuable considerations* the receipt of which is hereby acknowledged, the parties of the first part have bargained and sold and by these presents do grant and convey unto the said parties of the second part, their executors, administrators and assigns, all the goods, wares, merchandise, supplies, machinery, fixtures, etc., set forth in the schedule hereinbefore mentioned hereby confirming the said bill of sale and including it in and making it a part of this agreement, as well as all other property of the said parties of the first part except the book accounts. And the said parties of the first part further transfer, grant and convey to the said parties of the second part all the business of said copartnership as well as the good will of the same, and further agree that neither they, the parties of the first part, nor either of them, shall hereafter, at any time within five years from the date of this agreement, carry on or conduct in the City and State of New York, or in the United States, a similar business or manufacture, deal in or sell church goods, wares, merchandise or supplies."

The contract, after acknowledging the receipt of the $75, provided that the balance of the $3,800 should be paid in monthly installments, "equal to the

amounts realized from the sale of the articles covered by the said bill of sale during the current month."

The goods mentioned in the schedule annexed to the bill of sale were delivered to the corporation, which disposed of all, or a considerable portion, of them. The day following the execution of the instruments, M. B. Diepenbrock, one of the members of the firm, entered the employ of the corporation. Subsequently, however, he left such employ, and, in violation of the covenant contained in the contract, engaged in a similar business.

In an action brought by an assignee of the firm against the corporation to recover installments alleged to be due under the contract, it was

*Held*, that the $3,800 mentioned in the bill of sale constituted the consideration for the goods mentioned in the schedule attached thereto;

That the phrase "and for other good and valuable considerations, the receipt of which is hereby acknowledged," contained in the supplemental agreement, constituted the consideration for the transfer of the property not covered by the bill of sale and designated in the supplemental agreement as "the other property of the said parties of the first part," as well as the consideration for the covenant that the parties of the first part would not engage in the manufacture and sale of similar goods during an interval of five years;

That such last-mentioned covenant was an independent covenant, the performance of which by the members of the firm was not a condition precedent to their right to receive payment for the goods mentioned in the schedule annexed to the bill of sale;

That the corporation's remedy for a breach of such covenant was to set up, in the action to recover the unpaid portion of the $3,800, the damages resulting from such breach, or to maintain an independent action against the partners to recover such damages;

That the provision in the contract that the unpaid portion of the $3,800 should be paid in monthly installments equal to the amounts realized from the sale of the articles covered by the said bill of sale during the current month, was not ambiguous; that it contemplated the placing of the receipts from the sales of the articles covered by the bill of sale in a fund, for the payment of the indebtedness in monthly installments, and that it was error for the court to allow testimony that one of the partners had construed such provision to mean that the payments should be made upon the basis, not of the amount realized upon the sale of the articles covered by the bill of sale, but upon the purchase price of such articles, leaving the profits to the use of the defendant;

That evidence of a practical construction placed upon a contract by the acts of the parties is not admissible where the language of a contract is unambiguous;

(Per GOODRICH, P. J. and WOODWARD, J.) That the court erred in permitting the defendant to introduce in evidence a contract of employment, made between one of the partners and the corporation, the day succeeding the making of the bill of sale.

APPEAL by the plaintiff, Joseph R. Kinney, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of Kings on the 14th day of April, 1903, upon the decision of the court, rendered after a trial of the Kings County Trial Term, a jury having been waived, dismissing the plaintiff's complaint upon the merits.

*James L. Bennett* [*Max Meyer* and *William Phlippeau* with him on the brief], for the appellant.

*Almet Reed Latson,* for the respondent.

WOODWARD, J. :

The plaintiff, as the assignee of M. B. Diepenbrock & Co., brings this action to recover various installments alleged to be due under the provisions of a certain contract in writing, dated October 30, 1900, between the plaintiff's assignors and the defendant, and the broad question presented upon this appeal, upon which all, or substantially all, of the others depend, is whether the learned trial court, before whom the case was tried without a jury, has correctly construed the contract between the parties. The proper construction of the contract being one of law, if there has been error in this respect, the plaintiff, whose complaint has been dismissed, has a clear right to a new trial, and it becomes necessary, therefore, to consider the contract somewhat in detail.

On the 30th day of October, 1900, Melchior B. Diepenbrock and Louis C. Herckenrath were engaged in business in the city of New York under the firm name of M. B. Diepenbrock & Co., and this firm, as parties of the first part, made and executed a certain bill of sale of the property of said firm to the defendant. This bill of sale recites that the " parties of the first part, for and in consideration of the sum of Thirty-eight hundred Dollars lawful money of the United States, of which Seventy-five Dollars are to us in hand paid, at or before the ensealing and delivery of these presents by D. H. McBride & Company, a corporation existing under the laws of the State of Illinois, parties of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said parties of the second part, their executors, administrators and assigns, all the goods, wares, merchandise, fixtures, supplies, machinery, etc., which appear in the annexed schedule." To this bill of sale is annexed a detailed schedule of items ranging from a few cents to over $100, aggregat-

ing exactly $3,800, and it is conceded that these goods were subsequently delivered to the defendant, which has since disposed of the same, or at least a very considerable part of them.  Subsequent to the making and executing of this bill of sale, and upon the same day, the same parties entered into another, or supplemental contract, which refers to the bill of sale, and the two, it is clear, are to be read and construed together.  This second contract recites that

" WHEREAS, the said parties of the first part have by a certain bill of sale attached hereto, dated October, 1900, which is embraced in and forms a part of this agreement for a consideration of Thirty-eight hundred dollars to be paid in the manner and under the conditions hereinafter set forth have bargained and sold, granted and conveyed to the said parties of the second part, their executors, administrators and assigns certain goods, wares, samples, merchandise, supplies, machinery, fixtures, etc., a schedule of which is attached to the said bill of sale, and

" WHEREAS, the said parties of the first part desire to grant and convey to the parties of the second part the good will of said copartnership business, all the goods, wares, merchandise, supplies, machinery, fixtures, samples, etc., which the said parties of the first part possess as well as all other property of said copartnership, except the book accounts, and

" WHEREAS, the said parties of the second part desire to take over said copartnership business and manage, conduct and own the same under the conditions hereinafter set forth.   And

" WHEREAS, the said parties of the first part and said parties of the second part desire to set forth more fully the manner in which said consideration of Thirty-eight hundred dollars shall be paid as well as the conditions of such payments.

" *Now, therefore*, in consideration of the sum of Thirty-eight hundred ($3,800.00) Dollars lawful money of the United States of which seventy-five dollars are to them in hand paid at or before the ensealing or delivery of these presents ; the balance to be paid in manner and form hereinafter set forth and *for other good and valuable considerations* the receipt of which is hereby acknowledged, the parties of the first part have bargained and sold and by these presents do grant and convey unto the said parties of the second part, their executors, administrators and assigns, all the

goods, wares, merchandise, supplies, machinery, fixtures, etc., set forth in the schedule hereinbefore mentioned hereby confirming the said bill of sale and including it in and making it a part of this agreement, as well as all other property of the said parties of the first part except the book accounts. And the said parties of the first part further transfer, grant and convey to the said parties of the second part all the business of said copartnership as well as the good will of the same, and further agree that neither they, the parties of the first part, nor either of them, shall hereafter, at any time within five years from the date of this agreement, carry on or conduct in the City and State of New York, or in the United States, a similar business or manufacture, deal in or sell church goods, wares, merchandise or supplies."

The bill of sale, it will be noticed, is made for and in consideration of $3,800, a payment of $75 of which is acknowledged, and this bill of sale is accompanied by an itemized schedule of goods transferred at prices which are agreed upon, so that there is an executed contract of sale of specific items aggregating $3,800. Subsequently the parties of the first part, being desirous of closing out the entire business and assets of the firm, with the exception of the book accounts, enter into a new agreement ratifying and confirming the bill of sale, and upon the same specified consideration as that fixed in the bill of sale, " and for other good and valuable considerations the receipt of which is hereby acknowledged," and which alone constitutes the consideration for the transfer of the " other property of the said parties of the first part " as well as for the covenant that they would not enter into competition in the manufacture and sale of similar goods during an interval of five years. Here are two distinct transactions, each resting upon its own consideration, and the fact that they are both merged in the one instrument does not affect the construction which should be given them. The second instrument does not modify the first; it confirms it and provides the details of payment, which otherwise would have become due and payable on demand, and the transfer of all the other property and the covenant mentioned constitute the new contract, based upon the other valuable considerations recited. If we are correct in this view, it follows that the contention of the respondent, which appears to have been the theory of the learned trial court, that the con-

sideration of $3,800 was paid for three things: "(a) certain merchandise; (b) the good will and entire business of the vendors; (c) a covenant not to compete in this line of business for a period of five years; and the greatest and most valuable of these was the good will," is untenable. The $3,800 was the consideration for the merchandise alone; the bill of sale, which fixes this amount and names it as the consideration, without modification in its terms, is read into and made a part of the new contract, which acknowledges the receipt of "other good and valuable considerations," without which it is difficult to imagine any consideration for the transfer of all other property of the firm, with its good will and the covenant recited. The bill of sale was for a consideration of $3,800; this fact is recited in the preamble, and the bill of sale is made a part of the new agreement for the purpose of providing the details of payment, and to say that this same consideration could become at the same time the consideration for the new grants is an absurdity, and the language of the new contract runs to the contrary, for it recites "other good and valuable considerations," the receipt of which is acknowledged as a basis for the new conditions and covenants. The bill of sale, modified only as to its terms of payment, became an executed contract immediately upon the chattels passing into the possession of the defendant, and whether this transfer was made under the original bill of sale, or the new contract, the obligation of the defendant to make payment under the terms agreed upon became fixed. There were no conditions precedent to be done and performed by the plaintiff's assignors; the defendant owed them $3,800, not for their good will, nor yet for their covenant not to compete, but for the actual merchandise detailed in the schedule attached to the bill of sale, and this obligation cannot be defeated because one of the parties of the first part may have violated an independent covenant, resting upon a distinct consideration and under a practically independent contract, for the agreement of October 30, 1900, does not pretend to change the terms of the bill of sale, except in so far as it provides for deferred payments, but leaves it in full force, and provides a new consideration for new transfers and the covenant here under consideration. Contracts are severable when the part to be performed by one party con-

sists of several distinct and separate items, and the price to be paid by the other is apportioned to each item or is left to be implied by law. (*Ming* v. *Corbin*, 142 N. Y. 334, 340, 341, and authorities there cited.) In the case now before us the price to be paid for the merchandise is apportioned; the price paid for the other property of the firm, its good will, etc., has been paid and its receipt is acknowledged; and if the plaintiff's assignors have violated the covenant not to enter into competition with the defendant the remedy is rather by an action or counterclaim for the damages sustained than a defense to this action. The respondent seems to concede, upon the authority of *Tipton* v. *Feitner* (20 N. Y. 423) and *Sickels* v. *Pattison* (14 Wend. 257), that a covenant is independent where by the terms of an agreement the consideration is shown to be divisible and is apportioned, and we are clearly of opinion that this agreement comes within that rule, and that the plaintiff's right of action could not be defeated by the individual acts of one of the parties of the first part, or by both of them, although it might be that damages sustained through a breach of the covenant, before the rights of the plaintiff accrued, might be recovered upon a counterclaim. The covenant of the plaintiff's assignors not to engage in business in competition with the defendant for a period of five years was not a condition precedent to the payment of the purchase price of the goods; it was an independent covenant, extending beyond the time limited for the payment of the money, and while its breach might give the defendant the right, proceeding in the manner prescribed by law, to rescind the contract, this could only be done by the defendant restoring the goods mentioned in the bill of sale, and placing the parties upon the same footing which they occupied at the time of entering into the contract. (*Cox* v. *Stokes*, 156 N. Y. 491, 507.) The law, no doubt, intends to discourage men from breaking their engagements, but this is not generally accomplished by visiting them with a penalty beyond the damages sustained by the party injured (*Tipton* v. *Feitner*, *supra*, 427), and it would be shocking to an enlightened sense of justice to say that the defendant might take this property and refuse to pay for the same because one of the parties to the original contract had violated in some small measure an independent covenant, the damages, if any, being trifling as compared with the agreed price of the

property involved. The contract did not make the observance of this covenant a condition precedent to the payment of the obligation; a reading of the entire contract forbids the conclusion that the parties contemplated anything more than a sale of the goods for $3,800, and a transfer of the remaining property, good will, etc., for a further valuable consideration, coupled with a covenant which related wholly to the good will under the second transfer, and as the payments in any event were to be made before the expiration of the time fixed in the covenant, during which the plaintiff's assignors should not engage in a competing business, it follows that the minds of the parties could not have met upon the proposition now attempted to be maintained, that a failure on the part of either of the parties of the first part to observe the terms of the covenant should defeat a recovery. All of the requirements of justice would be met by an action or counterclaim for the damages resulting from a breach of the covenant, and this must be deemed to have been the extent to which the contracting parties assented.

There is, however, another reason why this judgment should be reversed, and, as a new trial must follow, it is proper that it should be discussed. The contract of October 30, 1900, after again acknowledging the receipt of seventy-five dollars, provides that " the said parties of the second part hereby agree to pay the balance of said Thirty-eight hundred dollars in manner and form following; the balance of the said amount shall be paid in monthly installments, which said monthly installment shall be equal to the amounts realized from the sale of the articles covered by the said bill of sale during the current month; said monthly installments to be paid by the said parties of the second part as soon as the statements of the sales for each current month are completed and the accountants of the said parties of the second part have time to check up and render a check for the same, but it is hereby agreed that in no event shall payment for such articles be delayed for a period exceeding fifteen days after the parties of the second part shall have rendered to them the statement of the sale of such articles for such current month, which checks, it is hereby agreed by all the parties to this agreement, shall be made payable to the order of M. B. Diepenbrock." It seems entirely plain to us that this provision that the defendant should pay over monthly the " amounts realized from the sale of

the articles covered by the said bill of sale" is not ambiguous in any sense ; it contemplated the placing of the receipts from the sales of these articles into a fund for the payment in monthly installments of the indebtedness, but the learned trial court, over the objection and exception of the plaintiff, permitted oral testimony tending to show that Mr. Diepenbrock, one of the parties of the first part in the contract, who was in the employ of the defendant, had construed this provision to mean that the payments should be made upon the basis, not of the amount realized, but upon the purchase price of the article, leaving the profits to the use of the defendant. It is probably true that some of the payments were made upon this basis, but after the closing out of the firm business of M. B. Diepenbrock & Co., and after Mr. Diepenbrock became an employee of the defendant, we know of no rule of law by which he could consent to a change in the construction of this agreement to the detriment of his former partner, and it does not seem entirely clear to us that even Mr. Diepenbrock intended to do so. It seems to have been his business to make up the statement as to the goods which had been sold, and these statements merely made use of the figures of the schedule attached to the bill of sale, and this may have been merely his method of showing the goods sold, the matter of the amount realized being calculated upon a percentage or some other method not shown. But whatever may have been done, it could not change the legal construction of the contract as it related to the interests of the firm, as distinguished from its individual members, and it was clearly error for the court to admit parol evidence for the purpose of varying the terms of a written contract. No rule which has any support in authority permits this, even in the case of ambiguity. Its meaning may, in some instances, be explained, but when the meaning has been ascertained that must prevail. (See *Schoonmaker* v. *Hoyt*, 148 N. Y. 425, 431, and authorities there cited ; *Dady* v. *O'Rourke*, 172 id. 447, 453, and authorities there cited.) But the respondent urges that the practical construction put upon contracts by the parties themselves is controlling against its strict construction, and this might be true where there was room for construction, but no rule goes to the extent that a meaning which is entirely inconsistent with the language used may be read into a written contract by the acts of the parties and particularly where

the action is not that of all of the parties to the contract.    If there is ambiguity there is room for the introduction of parol evidence to show what construction the parties have put upon it, but where the language is clear and capable of only one construction, and that one entirely within reason, there is no possible excuse for opening the doors to this kind of evidence, and its admission is error.

It appears, however, that there was some dispute as to the amount due at a particular time, and, subsequently, Mr. Diepenbrock made up a new statement, basing it upon the amount realized upon the sale of these goods, and the defendant refusing to comply with the plain language of the contract, the former severed his connection with the defendant, began looking up business for another firm and finally accepted employment with a Philadelphia house doing a similar business, and it was this conduct on the part of Mr. Diepenbrock which was relied upon as a breach of the covenant.    It appears, however, under the legal construction of the contract, that the defendant was in default in the payments due to the plaintiff's assignor before the alleged breach of covenant, and it would be a harsh rule to say that under such circumstances the plaintiff's assignor, who came into all of the rights of both partners, could be deprived of his right of recovery by reason of the breach on the part of one of them of an independent covenant.

It is clear, also, that the learned court erred in permitting the introduction in evidence of the contract of employment made by Mr. Diepenbrock with the defendant on the 31st day of October, 1900.    This was on a day succeeding the contract of sale, the contract of employment makes no mention of that transaction and is not between the parties to the contract of October thirtieth, but between the defendant and one of the same parties.    This contract in nowise related to the controversy before the court, was admitted over the plaintiff's objection and exception, and it clearly appears that it operated to the prejudice of the plaintiff, for it is commented, upon as a material fact in the opinion handed down in the case.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

GOODRICH, P. J., concurred; HIRSCHBERG and JENKS, JJ., concurred except as to the last point considered in the opinion.

Judgment reversed and new trial granted, costs to abide the event.