JOSEPH ABRAMOWITZ and Another, Appellants, *v.* PHILIP FRACCALVIERI and Others, Respondents.

Second Department, November 14, 1929.

*Lester M. Friedman* [*Albert A. Burdick* with him on the brief], for the appellants.

*Frank M. Nicolosi* [*Maurice J. Giaimo* with him on the brief], for the respondents.

KAPPER, J. Plaintiffs, vendees, sued their vendors to recover a down payment of $3,000 made on a contract for the purchase of real estate, and to impress that amount as a vendee's lien upon the property. The contract describes the property, viz., " the seller agrees to sell and convey, and the purchaser agrees to purchase all that lot or parcel of land, with the buildings and improvements thereon in the Second Ward of the Borough of Queens, County of Queens, City and State of New York, known and distinguished as and by the numbers 16, 17 and 18 of Map of Property belonging to Charles Bermel, surveyed by Homer L. Bartlett, January, 1910, which said map was filed in the Queens County Clerk's office on the 17th day of January, 1912."

The map so referred to shows a frontage on Union avenue (now Corona avenue) of sixty feet six inches, with a depth of sixty-one and sixty-one one-hundredths feet on the easterly line and seventy-four and eighteen one-hundredths feet on the westerly line. We thus have a written contract providing for a conveyance of certain dimensions. This was explicitly found by the trial court. The deed tendered as a compliance with the contract described the property of a depth of only fifty-one and sixty-five one-hundredths feet on the easterly side and sixty-five and forty-five one-hundredths feet on the westerly side.

It was also found:

" 28. That Philip Fraccalvieri and Michele Laterza were not, at the time of making the contract, and up to March 31, 1926, the owners of a strip of approximately 9 feet in depth along the entire frontage, the difference between the property contracted to be conveyed and the property they actually owned, and at no time acquired title thereto.

" 29. That the property actually owned by Philip Fraccalvieri and Michele Laterza, and tendered for conveyance by Philip Fraccalvieri and Maria J. Laterza on March 31, 1926, had a frontage of 60.06 feet, a rear line of 61.36 feet and was 51.65 feet and 65.45 feet respectively on the sides."

And a further finding was:

" 32. That said premises are situated in the City of New York, and a difference of nine feet in depth is a substantial and material variance."

Despite these findings, the plaintiffs in rejecting the title have been held at fault, upon the theory that, even though the quantity agreed in writing to be conveyed was not met by the proposed conveyance, they knew of the shortage of land.

The property in question has upon it three three-story brick buildings, consisting of dwellings and stores. It was found that

the plaintiffs inspected, examined and knew the *physical* and *monumental* boundaries of the property and its limits. That they knew *the actual dimensions* of the property is not asserted, nor is there any finding that they did. The utmost of the vendors' claim is that the plaintiffs looked at so much of the premises as were vacant in the rear of the buildings, and that they had an " understanding " of the " physical " boundaries before they contracted, and that they (as per finding) " understood that the property about to be purchased was bounded:— in front by Corona Avenue; on the sides by the lateral walls of the buildings; in the rear by the picket fence and the building immediately adjoining the premises in the rear."

It was found that the plaintiffs knew that Corona avenue had been widened and that the buildings were constructed on the new line of Corona avenue after the widening. This is predicated wholly upon the testimony of the defendant Fraccalvieri who, showing the premises to the plaintiff Tenenbaum, testified: " Q. At the time you went in the back yard did you have any conversation regarding the fence that was in the back yard? A. Yes, she said it's a small yard, and I said, ' It's a small yard because the City has taken part of the ground away on Corona Avenue.' And she said, ' Where do the lots run? ' And I said, ' The way the fence is; ' and she said, ' Very short lots,' and I said, ' Well, that's the property.' "

Plaintiff Tenenbaum subsequently and categorically denied this conversation; but, assuming the truth of Fraccalvieri's testimony, that does not import the fact that the depth was but fifty-one feet instead of sixty-one feet on one side and sixty-four feet instead of seventy-four feet on the other side, or, in other words, a difference of nine or ten feet in the depth of these abbreviated lots.

The defendants stand squarely upon the proposition that by plaintiffs' refusal to take the lots they have forfeited their down payment of $3,000.

No defense is interposed seeking specific performance and incidental reformation of the contract to conform to the alleged intention of the parties. And the question is, can the defendants hold the plaintiffs' money in an action of this character where the pleadings show no equitable demand on the part of the defendants, vendors.

In the form in which that case was tried and comes to us, the defense, not pleaded, but sought to be proved, was that of an equitable estoppel, based upon alleged conversations importing knowledge in the vendees of the amount of land which they were purchasing. A vendee under a land contract has a lien upon the

land for the part payment of the purchase money if, by reason of the vendor's default, the contract is not performed; and when the vendor cannot convey, the equitable owner, the vendee, wholly or in part, may assert his rights in a court of equity to get out of the land what he paid on it. (*Elterman* v. *Hyman*, 192 N. Y. 113, 125.) In an action such as the present one, the lien is a mere incident of the debt, being given solely to secure its payment. (*Borst* v. *Corey*, 15 N. Y. 505, 509.) It was, therefore, held in the case last cited that the six-year Statute of Limitations could be invoked against plaintiff's demand for a lien, and that the vendee could not after the expiration of six years apply the usual ten-year limitation pertaining to actions in equity, the Court of Appeals saying (p. 508): "It is true that, to sustain the suit in equity, the plaintiff must bring to his aid the equitable lien given by law, while the action at law can be sustained without reference to such lien. But the lien is merely an incident to, and must stand or fall with the debt. The debt is the basis or foundation of the lien. The latter cannot exist without, or independently of the former. In the suit to enforce the lien the cause of action, and the only substantial cause of action, is the debt." Hence, the parol evidence rule must be applied here in the absence of a claim by the vendors for specific performance coupled and as an incident with a demand for a reformation of the contract to conform to the claimed intention of the parties.

In *Dady* v. *O'Rourke* (172 N. Y. 447) there was a contract to sell all of one's stock in a corporation for a specified sum, the contract further providing that the stock holdings being turned over amounted to three-fifths of the capital. It was held that this contract was not fully performed by the vendor's delivery of a lesser number of shares, although they constituted the vendor's entire holdings; and that parol evidence tending to show that the vendor intended to sell and the vendee to buy only such stock as was held by the former, irrespective of the amount, was inadmissible. The court (p. 452) say: "Now, it must be borne in mind that this is not an action to reform a contract so that it shall voice the agreement the parties intended to make. On the contrary, it is based on the contract *as it was written* with the claim of full performance on the part of plaintiff, and, therefore, cannot be maintained by evidence that the contract was intended to be a different one, for it is the general rule that when an agreement is reduced to writing, it, as between the parties, merges and overcomes all prior or contemporaneous negotiations upon the subject, and that oral evidence is not admissible to vary, explain or contradict its terms, for the writing is conclusively presumed to

contain the whole engagement of the parties. * * * The evidence was apparently admitted upon the view that the contract was ambiguous and hence that the proof of the facts and surrounding circumstances was admissible in order to aid the court in arriving at the intention of the parties, but as we read it it is clear and unambiguous, and, therefore, to be construed according to its language."

In the case at bar there is no ambiguity regarding the quantity of land agreed to be sold. The attack upon the vendees' position is not ambiguity of contract but that the parties intended, the one to buy, and the other to sell, so much of the land as could be conveyed, which was less than that which the contract called for. Had the defendants demanded specific performance with a reformation of the contract to conform to the assumed intention of the parties, such a defense would have been available if it could have been shown upon the trial that the position of the vendees had not changed so as to make specific performance and reformation inequitable. (*Weinheimer* v. *Ross*, 205 N. Y. 518, 521.)

For the reasons stated the judgment should be reversed upon the law and the facts, with costs, and a judgment directed in favor of the plaintiffs for the recovery of their down payment, with costs, with a reversal of findings inconsistent with the decision, and new findings accordingly to be made.

LAZANSKY, P. J., RICH, SEEGER and SCUDDER, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed in favor of the plaintiffs for the recovery of their down payment, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.