[S. F. No. 5790.   Department One.—April 2, 1912.]

## JONES & LAUGHLIN STEEL COMPANY, Respondent, v. ABNER DOBLE COMPANY, Appellant.

PLEADING.—GOODS SOLD AND DELIVERED—DENIAL OF DELIVERY OF "ALL"
OF MATERIALS.—In an action for goods sold and delivered a denial
of an allegation in the complaint that the plaintiff delivered "all"
of the materials sued for is insufficient and is equivalent to an
admission that substantially all were delivered.

ID.—MATERIALS FURNISHED FOR BUILDINGS—FINDINGS—SPECIFICATIONS
NOT AGREED TO BE FURNISHED.—In an action to recover for certain
building material sold and delivered, to be used in certain build
ings to be erected by the defendant according to plans and drawings
prepared by the plaintiff, the findings that the plaintiff did not
agree to furnish specifications for the buildings, and that the plans
and drawings furnished were approved by the defendant, are held
to be supported by the evidence.

ID.—TIME FOR DELIVERY—REASONABLE TIME—FINDINGS.—Upon a review
of the evidence it is held, that the plaintiff did not agree to deliver
the materials in question at any stated time, and that an intima-

tion contained in one of its letters, during the negotiations of the parties respecting the work, as to the length of time it would take to furnish them, was a mere estimate and not a promise to deliver within such time; and that as no time was expressed, the plaintiff had a reasonable time to make the deliveries.

Id.—Warranty of Carrying Capacity of Floors—Evidence.—The finding that there was no contract or warranty by the plaintiff that the floors of the building in question would bear any specified weight is held to be supported by the evidence, which showed, in effect, that the general plans sent to the plaintiff by the defendant, who for many years had been engaged in heavy steel manufacture and professed to do the work of engineers therein, although they had marked thereon the weights to be carried on the floors, gave the sizes of the supporting beams for the floors, and beams of those sizes were furnished.

Id.—Breach of Entire Contract—Action for Reasonable Value of Goods Delivered.—One who has failed to perform a substantial and material part of an entire contract to erect a building or to sell property for a price to be paid when he has fully performed his obligation, cannot maintain an action technically on the contract for the price, but he may in a proper action recover the reasonable value of the goods delivered to and retained by the buyer.

Id.—Action for Price—Immaterial Variations from Contract—Deductions for Defects.—If the plaintiff suing for the value or the price, has endeavored in good faith to perform his part of the agreement, and has substantially performed, but there are unimportant defects arising from accident or inadvertence, and which do not defeat or materially change the object of the contract, he may recover the price, less the damage caused by the defects.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson, Drew, Oatman & MacKenzie, and J. C. Campbell, for Appellant.

Albert J. Dibblee, and Alex. G. Eells, for Respondent.

SHAW, J.—This is an action to recover the sum of $27,641.21, alleged to be due as the reasonable value of certain building material sold and delivered by plaintiff to the defendant at its request. The materials were to be used by the defendant in the construction of certain buildings upon its land. Plaintiff also claimed a lien therefor upon the land and build-

ing and certain other lien claimants were made parties
defendant. The appeal is by the Abner Doble Company alone.
The only dispute is in relation to the sum for which judgment
was given, and the liens and the other claims are not material
to our consideration of the case.

The complaint alleges the following facts: In 1906 the
defendant ordered from plaintiff, whose place of business was
Pittsburg, Pennsylvania, all the structural steel, metal window
frames, sash, doors, and wire glass and other metal material
required for a warehouse, a forge shop, and a lavatory, to be
erected by defendant according to plans and drawings pre-
pared and to be prepared by plaintiff, based on general sug-
gestions in letters and certain outline or preliminary plans
theretofore written and furnished by defendant. Plaintiff
prepared the plans and they were sent to and approved by
defendant. No price or specific time for delivery was agreed
upon. It was agreed that payment was to be made thirty days
after date of shipment, with the privilege to defendant of six
months' additional time by giving notes due in that time at
five per cent annual interest. Plaintiff furnished the materials
ordered. The reasonable value of that used in the warehouse
is $19,176.33, of which $3819.80 was paid. That used in the
forge shop was worth $10,323.80, of which $21.84 was paid.
That used in the lavatory was worth $1982.72, none of which
was paid. The total balance unpaid was $27,641.21, all of
which was past due. In pursuance of the agreement for credit
some notes were given by defendant to plaintiff, which plain-
tiff tendered for such disposition as the court deemed proper.

The answer of the Abner Doble Company admits that a con-
tract was made between said defendant and plaintiff for the
furnishing of the materials alleged. It avers as a counterclaim
that it was agreed that plaintiff would draw and furnish to
defendant "all the detailed plans and *specifications*" for the
aforementioned buildings, that the said plans and specifica-
tions were to be for "a good, first-class, substantial steel
framed building, of sufficient strength to carry, on one half of
the second floor of the warehouse, a weight of five hundred
pounds to the square foot, and on the other half one hundred
and fifty pounds to the square foot"; and that all said ma-
terial was to be delivered by the plaintiff in San Francisco,
in condition for placing in said buildings, the material for the

warehouse to be delivered between August 1, 1906, and October 15, 1906, and that for the forge shop on or about September 13, 1906. It then avers that plaintiff did not deliver said materials until eight months after the times agreed upon as aforesaid; that the building, as planned by plaintiff, and the material as constructed by plaintiff was not strong enough to carry the weights above mentioned; that the doors were not made as planned, or of good material and could not be used in the buildings, and that by reason of these breaches of the contract the defendant has suffered damage, to wit: from deprivation of the use of said buildings during the delay in completion thereof caused by said delay in shipment, in the sum of sixteen thousand dollars; by reason of the insufficient strength of the building, in the sum of ten thousand dollars; by reason of defective doors, in the sum of three thousand dollars; in all, twenty-nine thousand dollars.

The answer also denies that plaintiff delivered "all" of the materials agreed upon. This is an insufficient denial and is equivalent to an admission that substantially all were delivered. The omission of a single rivet or bolt would satisfy the denial. There is a denial that the value exceeds $16,982.71, but it is conceded that the proof was sufficient to support the findings on this point. The principal points relied on by appellant relate to the counterclaim, under the claim that the findings thereon are contrary to the evidence.

The court found that the plaintiff did not agree to furnish "specifications" for the buildings, but only plans and drawings; that the plans and drawings were prepared by plaintiff and were sent to and approved by the defendant; that no specific time was agreed on for the deliveries, except that they were to be furnished as speedily as circumstances would permit; that plaintiff substantially performed its contract, except that there were certain minor defects, for which allowance was made. As to these the findings are that the value of the material furnished, less payments thereon, was, for the warehouse, $15,300.98; for the forge shop, $10,301.96, and for the lavatory $1982.72, making the total $27,585.66. The minor errors in the warehouse material caused defendant to expend $964.14, and it would cost $140 to remedy the defects in the doors. Deducting the $1104.14 for these defects the balance remaining is $26,481.52, for which, with interest, judgment

was given. The court also found that plaintiff agreed to furnish no plans or drawings for the buildings, other than working plans showing the details of the erection and construction of the material which plaintiff was to furnish, and that plaintiff did not agree that the plans it prepared should provide a second floor strong enough to bear five hundred pounds, or one hundred and fifty pounds, to the square foot, or any other weight; that only such portion of the material to be furnished by plaintiff was to be fabricated by plaintiff as might be necessary to enable the defendant to conveniently and in the usual manner erect the same upon its lot, and that there was no agreement that all the material was to be framed by plaintiff. It is claimed that these findings are not sustained by the evidence.

1. There is no evidence that specifications were to be furnished by the plaintiff. The evidence on the subject related to plans and detail drawings, and they were furnished.

2. The plans and drawings were sent to defendant long before the material was furnished, and they were either expressly approved, or received without objection, and acted on by defendant, after full opportunity to ascertain their character. The only objection, if it can be called such, which is called to our attention, was made in a letter written several months after the plans and drawings were received by defendant and after they had been repeatedly examined by its officers in charge of the work. The finding that the plans and drawings were approved by defendant is amply supported by the evidence.

3. With respect to the alleged agreement as to time of deliveries there is some conflict. We must take that most favorable to the plaintiff, because it is presumed that the trial court did so. In May, 1906, Abner Doble, as agent for defendant, had a conversation with Geddes, who was a special agent of plaintiff for the sale of a different kind of material from that sold to defendant by plaintiff. Doble said his company was making designs for a warehouse and forge shop to be erected on its lot. Geddes requested that when it got its plans ready the defendant would place its order for the fabricated steel and iron work with plaintiff, suggesting that plaintiff's engineers could assist in arriving at the constructional details. No contract or agreement was made be-

tween them. The testimony of Abner Doble, as to there being a parol contract between himself and Geddes at that time, is contradicted in all essential particulars by Geddes. It must therefore be disregarded. The contract between the parties was made by the interchange of letters and telegrams. These begin with a letter of June 14, 1906, from defendant to plaintiff. It inclosed blue prints of a foundation plan, a cross-section of the elevation and some details of second floor construction for the proposed warehouse. It stated that defendant desired a plain, thoroughly substantial steel-frame building to carry a weight of five hundred pounds a square foot on one part of the second floor and one hundred and fifty pounds a square foot on the remainder. It gave many particulars as to the proposed building and stated that "what we desire to secure from you is the entire steel frame construction of the building, with the roof trusses, doors and windows, as outlined," and it asked an answer "at the earliest possible moment, as to just when you can make shipment of this building," saying further, "as this is our main warehouse building, it is imperative that shipment should be made at an early date," and that "we would appreciate drawings from you just as soon as possible." The general style and the angles and details of construction were left to the plaintiff's engineers, and their suggestions and comments were solicited. This letter was written in pursuance of suggestions made in the conversation between Doble and Geddes in May. On July 7th plaintiff answered, inclosing a blue print showing "our suggestions regarding this work" and asking approval. On June 26th defendant sent plaintiff drawings showing the design for the proposed forge shop, with an explanatory letter requesting that plaintiff's engineers "work out a type of building" for it, and that plaintiff state the price and time of delivery of the materials. This was not received by plaintiff until about July 11th. In the mean time defendant wrote again, inclosing blue prints showing the windows and doors of the forge shop. In this letter defendant said: "We trust that you will be able to get out the designs for these buildings promptly, so that we can get prompt shipment on the same," and asked plaintiff to send detail drawings immediately, so that defendant could have the foundation done at once, "as we are now working on same." On July 12th defendant, having

received plaintiff's letter of July 7th inclosing suggested plans, sent plaintiff this telegram: "How quick can you ship warehouse building. Crane runway already shipped. How soon forge building. Must have immediately drawings showing placing foundation bolts." To this on July 13th, plaintiff by wire answered "Could begin shipment warehouse building six weeks, complete twelve weeks. Could begin shipment forge building eight weeks, complete fourteen weeks. Drawing showing foundation bolts can be sent promptly upon receipt of advice that we are to proceed with work." To the latter defendant, by wire, replied, July 13th: "Enter order rush work on warehouse and forge buildings. Anticipate promised shipment if possible. Send immediately drawing showing foundation bolts and necessary information to build foundation. Work on foundation delayed for this information." Plaintiff on July 13th wrote defendant, referring to the telegrams and saying: "We have made a careful canvass of the matter. The best we think we can do for the warehouse would be to begin shipment in about six weeks and complete in about six weeks thereafter. For the forge building, we could begin shipment in about eight weeks and complete in about six weeks later. . . . From a careful canvass of the conditions now existing we do not think they would justify a quicker promise than above." On July 26th plaintiff forwarded to defendant drawings of foundation plans for warehouse and forge shop and general design for forge shop. On August 3d it sent detail plans of window frames and sash. On August 17th defendant sent to plaintiff plans for an alteration consisting of a lavatory to be put between the two buildings at the second story and to be attached to the walls and to communicate with each building and asking detail plans for the metal work therefor and that plaintiff furnish the fabricated material necessary.

Other correspondence was had making various changes in the plans, which were suggested by the defendant, and the final plans were apparently not determined until in September. Some changes were made even later. In defendant's letter of August 2d, containing a suggestion of a material change of the warehouse plan, it said: "We should be pleased to have you advise us as to when you expect to be able to ship the building." In its letter of September 17th, it said "You will note that from your letter of July 13th that you expected

to begin shipment of the warehouse building in six weeks and the forge shop in eight weeks, and in accordance with this promise the buildings should be coming along rapidly now."

Defendant claims that this correspondence shows a positive contract to ship the steel and iron work for the buildings at the times stated in plaintiff's letter and telegram of July 13th. We do not think it necessarily had that effect and that from the circumstances and the entire correspondence, the court below was warranted in holding that it did not. On July 13th the plans were not settled, many of them were not made, and plaintiff could not then know when they would be completed to the satisfaction of both parties. Until they were settled, plaintiff could not definitely know what it was to construct or how the material was to be fabricated. If the statements of July 13th had been in the positive language of a promise they could not be understood as anything more than a promise to begin and complete the shipments within the times stated, such time to be computed, not from the date of the statement, but from the time of the complete agreement on the plans. But in view of the uncompleted condition of the negotiations and of the plans at that time, it is more reasonable and natural to construe it as a mere estimate and not as a promise. The court below, as we understand, so interpreted the statement and we think it was correct. The subsequent conduct and letters of the defendant, at least suggests that this was its understanding, also, at that time. The result is that as no time was expressed, the law would imply an agreement to deliver within a reasonable time, or, as the court found, "as speedily as circumstances would permit."

4. There was sufficient evidence to support the finding that there was no contract or warranty by plaintiff that the floors of the warehouse should bear the weights above mentioned. The general plans sent to plaintiff by defendant showed a detail plan of the second floor, stating the weights to be carried thereon, and the accompanying letter also stated the same things. But plaintiff's advice was not asked on that point. Both the plan and the letter gave the sizes of the supporting beams for this floor, and beams of those sizes were furnished. The statements as to weights were apparently intended as information and not as a request for advice. The defendant was, and for years had been, engaged in heavy iron and steel

manufacture and professed to do the work of engineers therein.  The inference is that it could and would judge for itself as to the sizes of beams required.  It had a competent and experienced architect in its employ.  There is nothing necessarily showing that the defendant was not, or did not consider itself, competent to determine the matter, or that it relied on plaintiff's advice or suggestions regarding it; or that plaintiff offered or undertook to give such advice.  These observations also apply to the claim that the building was not sufficiently braced.  Upon the latter point there is, moreover, a conflict of evidence, and sufficient evidence to sustain a finding in favor of plaintiff thereon, that is was properly braced.

5. Defendant contends that plaintiff cannot recover because of the minor defects in the materials on account of which the lower court deducted $1104.14.  It cites on this point cases declaring that where one has contracted to erect a building or sell property for a price to be paid when he has fully performed his obligation, the contract being what is called an entire contract, he cannot recover on the contract, if he has himself failed to perform a substantial and material part of his own agreement.  It is true that in such cases the party cannot prevail in an action technically on the contract for the price, but it is well settled, and the cases cited recognize the rule, that he may recover in a proper action, the reasonable value of the goods delivered to and retained by the buyer.  (*Katz* v. *Bedford,* 77 Cal. 322, [1 L. R. A. 826, 19 Pac. 523].)  If the plaintiff suing for the value, or for the price, has endeavored in good faith to perform his part of the agreement, and has substantially performed, but there are unimportant defects arising from accident or inadvertence, and which do not defeat or materially change the object of the contract, he may recover the price, less the damage caused by the defects.  (*Perry* v. *Quackenbush,* 105 Cal. 308, [38 Pac. 740]; *City St. I. Co.* v. *Kroh,* 158 Cal. 325, [110 Pac. 933].)  There is much doubt whether the contract was entire and indivisible as 'to either of the three structures involved.  (See *Sterling* v. *Gregory,* 149 Cal. 120, [85 Pac. 305]; *Los Angeles etc. Co.* v. *Amalgamated O. Co.,* 156 Cal. 779, [106 Pac. 55].)  But conceding it to be so, the complaint counts upon the implied contract to pay the reasonable value of the materials furnished and the case falls within the rule last stated.

6. Our conclusion that the finding that the plaintiff did not agree to deliver the materials within a specific time, as alleged in the counterclaim and that there was no agreement that the second floor should bear certain weights, is sustained by the evidence, makes it unnecessary to consider the asserted errors of law in the admission or exclusion of evidence relating to the damages claimed to have been suffered by defendant from the failure to perform these alleged agreements, and also unnecessary to consider the rule as to the proper measure of damages from such breaches of contract or warranty, or as to the right to recover upon such contracts or warranties. There are no other points that require notice.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.