EL PUEBLO, DEMANDANTE Y APELADO, *v.* ZAMORANO, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre reivindicación de propiedad inmueble y nulidad.

No. 2064.—Resuelto en julio 12, 1920.

ALEGACIONES — ENMIENDAS — INCONGRUENCIA — EXCEPCIÓN PREVIA — PERJUICIO.— Cuando una enmienda es de tal naturaleza que debió haber sido concedida en interés de la justicia, la sentencia apelada no será revocada debido a defectos u omisiones que han sido subsanados por la parte contraria, o a una incongruencia inmaterial entre las alegaciones y la prueba, en ausencia de excepción previa presentada en tiempo, o si la prueba fué presentada sin objeción, o si aparece claramente que el demandado no fué perjudicado sustancialmente por tal defecto u omisión.

JURISDICCIÓN — CORTESÍA INTERNACIONAL — ACCIÓN CONTRA UN ESTADO EXTRANJERO.—Como una consecuencia de la independencia absoluta de toda autoridad soberana, y de la cortesía internacional que induce a todo Estado soberano a respetar la independencia y dignidad de los demás Estados soberanos, todos los Estados se niegan a ejercer por medio de sus cortes, jurisdicción sobre una

acción contra cualquier otro Estado, o sobre la persona del soberano de cualquier otro Estado, o sobre la propiedad pública de cualquier otro Estado, aunque dicho soberano o dicha propiedad se encuentren dentro de su territorio.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. M. Moraza.*

Abogados del apelado: *Hon. Attorney General* y *A. Arroyo.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

En la demanda original que fué presentada en este caso por el Fiscal General de Puerto Rico en julio de 1909, se alegaba que El Pueblo de Puerto Rico es el dueño de cierta finca cuya descripción es la siguiente:

"Solar radicado en la primera zona del barrio de Puerta de Tierra de la municipalidad de San Juan, colindando en veinte metros por el Norte con terrenos de El Pueblo de Puerto Rico, antes con la carretera de San Juan a Río Piedras; en veinte metros por el Sur con el Paseo de Covadonga; en diez metros por el Este, con terrenos también de El Pueblo de Puerto Rico; en ocho metros por el Oeste, con terrenos igualmente de El Pueblo de Puerto Rico."

El demandado alegó que la finca así descrita y que se trata de reivindicar le había sido cedida por el Gobierno de España en pago de la cantidad de 568 pesos, y solicitó que fuera citado de evicción el Gobierno de España de acuerdo con las disposiciones de los artículos 1384 y 1385 del Código Civil. Esta moción fué declarada sin lugar.

En mayo de 1915 el fiscal auxiliar de la Corte de Distrito de San Juan, sin que existiera una verdadera razón o necesidad para ello, radicó una demanda enmendada en la cual alegaba entre otras cosas lo siguiente:

"Que el demandante es dueño en pleno dominio de la siguiente finca:

' "Parcela de terreno radicada en la primera zona del barrio de Puerta de Tierra del término municipal de San Juan, con una superficie aproximada de 6,279 metros cuadrados colindante por el Norte con la carretera Núm. 1 y con el solar perteneciente a la Junta Local de San Juan, donde está enclavado el edificio escolar

Núm. 1; por el Sur con el paramento Sur de la muralla que separa esta parcela de la calle del Comercio de la Marina y con un solar ocupado por don Pedro Zamorano; por el Este con un trozo de camino que une la calle del Comercio de la Marina con la carretera No. 1; y por el Oeste con el precitado solar de la Junta Escolar de San Juan.'

"Que el demandado de modo ilegal detentando el derecho de propiedad del demandante posee y disfruta, dentro del predio descrito en el hecho segundo de esta demanda, una parcela que se describe del modo siguiente:

' "Solar radicado en la primera zona del barrio de Puerta de Tierra de la municipalidad de San Juan colindando en 20 metros por el Norte con terrenos del Pueblo de Puerto Rico, antes con la carretera de San Juan a Río Piedras; en 20 metros por el Sur, con el Paseo de Covadonga; en 10 metros por el Este con terrenos también de El Pueblo de Puerto Rico; en ocho metros por el Oeste con terrenos igualmente de El Pueblo de Puerto Rico.'

"Que la forma y manera como el demandado posee dicha parcela es la siguiente: Don Pedro E. Zamorano fué durante la dominación española contratista de derechos de consumo o fielato que pagaban los artículos que entraban en la ciudad, y solicitó del gobierno de España autorización para construir con ese fin una caseta en dicho solar, permiso que le fué concedido por Real Orden de 28 de abril de 1892, llevándose a cabo la referida edificación.

"Que posteriormente, en 21 de julio de 1898, el demandado solicitó del Capitán General de la isla la propiedad del solar antes descrito en pago de la cantidad de $568 que el Gobierno le adeudara por el arrendamiento de una casa que Zamorano había cedido para instalar en ella un puesto de la Guardia Civil en el sitio 'Isla Verde,' de la municipalidad de Carolina.

"Que dicho Capitán General, sin cumplir con la ley, accedió a la solicitud del demandado dándole el título de propiedad del terreno pedido y disponiendo se otorgara la correspondiente carta de pago de los $568 adeudados.

"Más tarde, allá el nueve de agosto de 1900, Patricio Zamorano promovió un expediente de dominio ante la corte de distrito de San Juan, alegando ser dueño del solar y casa en él construída, por compra a don Pedro E. Zamorano, y tramitado dicho expediente la corte dictó en fecha trece de octubre de 1900 un auto declarando justificado el dominio de la finca descrita, disponiéndo se librara la certificación correspondiente para llevar a cabo la inscripción en el

registro de la propiedad, habiéndose verificado ésta al folio 138 vuelto del tomo 41 de San Juan, finca Núm. 1697. Que Patricio Zamorano hizo traspaso de dicha finca a Guillermo García Mayo y éste a su vez la trasmitió al demandado en este caso por escritura de 12 de febrero de 1903, otorgada en esta ciudad y consta inscrita a favor del demandado al folio 233 del tomo primero de Puerta de Tierra, finca número 1697, inscripción tercera.

"Que la cesión y traspaso hecha al señor Zamorano por el Capitán General de la isla se realizó sin que mediara un real decreto autoritativo de la misma; sin que el Rey fuese autorizado por ley especial alguna del Congreso español para enajenar o ceder la parcela objeto de este litigio, que formaba parte del territorio español, ni obtuvo el citado Capitán General o Gobernador Civil la aprobación del Secretario correspondiente del Gabinete para realizar la cesión aludida.

"Que por no haberse cumplido con los requisitos legales es nula y sin valor alguno la cesión hecha a favor de Zamorano, nulo y sin valor alguno el expediente de dominio tramitado y nulos también y sin valor alguno legal las inscripciones hechas en el registro de la propiedad."

La contestación formulada a la demanda enmendada contiene las siguientes admisiones:

"Es cierto el hecho quinto de la demanda, a excepción de la frase ilegal contenida en el primer renglón de dicho hecho pues el demandado posee y disfruta el terreno legalmente y a virtud de título de dominio inscrito a su nombre en el registro de la propiedad.

"Es cierto el hecho sexto de la demanda a excepción de las palabras, 'sin cumplir con la ley' que se leen en el primer renglón del párrafo tercero del referido hecho."

Las mismas admisiones han sido hechas en una contestación enmendada que fué luego radicada, en la cual se revisa el párrafo quinto a fin de que contenga las siguientes alegaciones:

"Es cierto el hecho quinto de la demanda a excepción de la frase ilegal contenida en el primer renglón de dicho hecho, pues el demandado posee y disfruta el terreno legalmente por cesión que le hiciera el Gobierno de España, ratificada por el Tratado de París con motivo de la Paz entre España y los Estados Unidos, poseyendo título de dominio inscrito a su nombre en el registro de la propiedad."

La sentencia apelada, de acuerdo con la súplica de la demanda enmendada decretaba la nulidad de la cesión hecha por el Capitán General, Gobernador Civil de Puerto Rico, el 20 de julio de 1898 a favor de don Pedro E. Zamorano de la siguiente parcela de terreno:

"Solar radicado en la primera zona del barrio de Puerta de Tierra de la municipalidad de San Juan, colindando en 20 metros por el Norte con terrenos de El Pueblo de Puerto Rico, antes con la carretera de San Juan a Río Piedras; en 20 metros por el Sur con el Paseo de Covadonga; en 10 metros por el Este con terrenos también de El Pueblo de Puerto Rico; en ocho metros por el Oeste, con terrenos igualmente de El Pueblo de Puerto Rico; nulo el expediente de dominio aprobado por el Tribunal de Distrito de San Juan, en octubre 13 de 1900 de la parcela antes descrita a favor de Patricio Zamorano, e inscrito al folio 138 vuelto tomo 41 de San Juan, finca 1697, inscripción primera; nulas las inscripciones o ventas hechas de dicha parcela por Pedro Zamorano a favor de Guillermo García Mayo y la de éste a favor de Pedro E. Zamorano que está inscrita en dicho registro de la propiedad al folio 233 del tomo primero de Puerta de Tierra, finca número 1697, inscripción tercera; declaraba que El Pueblo de Puerto Rico es el único dueño de la parcela antes descrita y ordenaba la cancelación de la inscripción de dominio a favor de Patricio Zamorano y de las otras inscripciones sucesivas."

El apelante no ha hecho señalamiento especial de errores y poca razón tendría para quejarse si la sentencia fuera confirmada sin discutirse sus méritos, *Méndez* v. *Martínez,* 26 D. P. R. 961; *El Pueblo* v. *Martínez,* 26 D. P. R. 258. Hemos tenido sin embargo, el trabajo de leer todo dicho voluminoso alegato, cuyas páginas no han sido foliadas, y su larga lista de preceptos estatutorios y resoluciones judiciales que se alega han sido "infringidos," y consideraremos brevemente las cuestiones más importantes que han sido discutidas.

En el alegato se dice en forma más o menos desencadenada y sin un fin determinado que el demandante no ha probado el dominio de la finca que se trata de reivindicar, que

la demanda se refiere a una propiedad distinta a la que fué adquirida y poseída por el demandado, que el demandante, para probar su dominio a la propiedad descrita en el segundo párrafo de la demanda enmendada y demostrar que la parcela de que está en posesión el demandado, está comprendida en tal parcela de mayor cabida, presentó un plano o mensura hecho después de la radicación de la demanda sin previo aviso al demandado y con infracción del artículo 286 del Código de Enjuiciamiento Civil y del artículo 22 de la Ley de Evidencia a cuya admisión el demandado debidamente formuló objeción.

Aunque la alegada errónea admisión del plano de referencia es la cuestión en la cual insiste el apelante en su alegato, el aspecto más serio de esta faz del caso y la única cuestión que ha dado lugar a alguna vacilación para confirmar la sentencia no es tanto la cuestión de la admisibilidad de la prueba como la de una incongruencia entre las alegaciones y la prueba. Si el demandado mismo no hubiera corregido el defecto en la alegación por virtud de las admisiones hechas en su contestación dejando no solamente de oponerse a la prueba presentada por el demandante menos en uno o dos casos sin importancia, como por ejemplo, en cuanto al plano arriba descrito sino que corroboró con su propia prueba los hechos así establecidos; o si hubiera aparecido que el demandado había sido sorprendido, engañado o en alguna forma inducido a error en su perjuicio, estaríamos dispuestos a revocar la sentencia apelada.

Pero como ya hemos demostrado, el demandado después de haberse radicado la demanda original, en su moción en la cual solicitaba que fuera hecho parte el Gobierno Español, alegaba que la finca descrita en tal demanda original es la que se alega que fué cedida al demandado por el Gobierno Español. Asimismo, tanto en la primitiva contestación como en la enmendada, formulada a la demanda enmendada, el demandado admite estar en posesión y reclama el dominio de la misma parcela de terreno que se describe y a la cual

se hace referencia en los párrafos quinto y sexto de la demanda enmendada y que dicha parcela está comprendida en la parcela descrita en el segundo párrafo de tal demanda enmendada, no obstante el error que es por si evidente en la pretendida descripción de la colindancia sur de tal parcela de mayor cabida.   No se formuló excepción previa basada en ambigüedad ni se hizo ninguna moción para que la demanda fuera más específica.

Independientemente del plano y de cierta certificación expedida por el registrador de la propiedad que fué admitida con la oposición del demandado, quedó plenamente demostrado por otra prueba, sin que se hiciera objeción, que la parcela de que ahora está en posesión el demandado, en la fecha del aludido traspaso a dicho demandado, formaba parte de la reserva militar española, estando situada cerca de la antigua puerta al este de la ciudad, dentro del sitio conocido como primera zona de guerra de la plaza fortificada de San Juan; que la misma en unión de otros terrenos públicos, propiedad del Gobierno Español, pasaron a los Estados Unidos por virtud del Tratado de París, y fué incluída en la porción de dichos terrenos que luego fueron traspasados a El Pueblo de Puerto Rico.

Pero de todos modos, cualquier defecto que hubiera podido existir en cuanto a esto quedó subsanado por la prueba presentada a favor del demandado.

Será bastante para demostrar esto, con citar los dos primeros documentos presentados como prueba por el demandado, los cuales han sido relacionados en los autos en la forma siguienté:

"Una certificación expedida en *3 de diciembre de 1907* por el señor Don Lázaro Argomaniz, Coronel de Infantería, Secretario del Gobierno Militar de la Provincia y Capitán General de Madrid; creditiva de que en el Diario Oficial número 93 del Ministerio de la Guerra fué publicada la Real Orden fecha 28 de abril de 1892, por la que en vista de lo expuesto por el Capitán General de esta Isla de Puerto Rico en 5 de marzo de 1892 al remitir una instancia pro-

movida por don Pedro E. Zamorano en solicitud de autorización para construir una caseta de madera con destino a fielato municipal, en la primera zona de la plaza de San Juan, el Rey y en su nombre la Reina Regente del Reino había tenido a bien acceder a lo solicitado por el recurrente Sr. Zamorano.''

''Esta prueba fué admitida sin objeción alguna.

''Una comunicación fechada a 21 de julio de 1898 y autorizada por el General Gobernador de esta plaza, Sr. Ortega, dirigida al Teniente de la Sección Montada del 1er. Batallón de Voluntarios, Sr. Pedro E. Zamorano, por cuya comunicación se le traslada una resolución del Capitán General del Distrito de fecha 20 de julio de 1898 y por la que esta última autoridad expresa que ha visto la instancia presentada a su autoridad por el Teniente de la Sección Montada del Primer Batallón de Voluntarios, Don Pedro Esteban Zamorano, en súplica de que puesto que se le adeudaban los alquileres correspondientes a la casa cuartel de la Guardia Civil y Destacamento Militar establecido en la Isla Verde, Carolina, en finca de la propiedad del Sr. Zamorano, ascendentes dichos alquileres a la suma de 568 pesos y no habiendo partida asignada a esta atención en el anterior presupuesto, según ya se le había notificado, se le diera en pago el solar que ocupa una caseta de madera que se hallaba construída a la salida de Puerta de Tierra, sitio comprendido entre el Paseo de Covadonga y la Carretera Central, y habiendo examinado el expediente de concesión para la construcción de la referida caseta en la Primera Zona polémica de esta plaza, del cual aparecía que en virtud de Real Orden expedida por el Ministerio de la Guerra S. M. el Rey y en su nombre la Reina Regente del Reino, sancionando aquella soberana disposición parecía haberse hecho cesión del terreno o solar que se solicitaba, de acuerdo con la Comandancia General de Ingenieros, por el que se manifestaba no haber tenido ni tener nada que objetar a tal concesión, ni en nada perjudicaba ni entorpecía la defensa de la plaza, resolvió se notificara al solicitante que si no fuera suficiente título de propiedad la Real Orden de concesión, en virtud de las facultades de que se hallaba revestido, accedía a lo solicitado por el oficial recurrente, quien debería dar la correspondiente carta de pago de los referidos créditos.''

Lo dicho en cuanto a la admisión del plano en cuestión como uno de los documentos que han sido enumerados y ofrecidos por el demandante es como sigue:

''Un plano oficial de los terrenos de Puerta de Tierra demostrando

los terrenos federales e insulares y de la propiedad particular en los barrios de la Carbonera y Puerta de Tierra, de San Juan, certificado dicho plano por el Comisionado del Interior, Manuel V. Domenech, cuya prueba fué objetada su admisión por la representación de la parte demandada en razón a no haber sido practicada con intervención del demandado, Pedro E. Zamorano, que es uno de los propietarios particulares a que la misma prueba se refiere. La corte admitió la prueba y la representación del demandado tomó excepción.''

El primer testigo del demandante declaró en cuanto a este plano y a otras cuestiones en la forma siguiente:

''Declara el Sr. Enrique González bajo juramento que es ingeniero y desempeña el cargo de Jefe de la División de Terrenos Públicos y Archivos en el Departamento del Interior hace diez años y estaba antes de assistant en la misma oficina hacía varios años, estando en el Gobierno desde la invasión americana. Con vista del plano presentado por la parte demandante dice que es el plano de Puerta de Tierra que demuestra los terrenos federales, insulares y de propiedad particular, de fecha noviembre de 1909, cuyo plano es auténtico, que el solar Núm. 12 del referido plano y que se encuentra demarcado con líneas amarillas es una parte de terreno perteneciente al Pueblo de Puerto Rico, inscrito en el registro de la propiedad; que el lote que aparece dentro de ese solar y que dice: 'Ocupado por Zamorano' forma parte de la parcela que se acaba de citar, que estará como a 150 metros más o menos de las antiguas murallas que fueron derribadas; que ese solar no tiene número. Expresa el demandante en este acto que el solar No. 12 de la parcela de terreno de El Pueblo de Puerto Rico, y el solar que ocupa Zamorano según el plano de 20 por 6 metros y por 3 no tiene número.

''Continúa el testigo manifestando que ha tenido bajo su consideración las tierras públicas de Puerto Rico; que el solar donde está enclavado el lote de Zamorano antes de la ocupación americana pertenecía al ramo de Guerra y se entregaron a la Hacienda unos solares que aparecen marcados del 1 al 22; que al municipio sólo se dispuso le fueran entregadas las calles y lo demás se conservó para el ramo de Guerra; que cuando en una Real Orden se cita una tierra como zona polémica quiere decir que es del ramo de Guerra; que el solar que refiere como de El Pueblo de Puerto Rico es la parcela que está marcada con tinta amarilla que tiene el número

12; que la parcela que refiere como ocupada actualmente por el Sr. Zamorano es la de 20 metros por el Norte; 20 metros por el Sur; 6 metros por el Este y 8 por el Oeste, hacia el Este de la parcela y como de la propiedad del Ramo de Guerra; que la dirección de las murallas era de Norte al Sur y distaban de esa parcela como 150 metros más o menos.

"A repreguntas del demandado contesta el testigo que el plano se levantó en noviembre del año 1909, en cuya fecha cree no se había interpuesto la demanda reivindicatoria por El Pueblo de Puerto Rico; que si la demanda tiene fecha 30 de junio, en noviembre de ese mismo año ya se había interpuesto entonces la demanda; que cuando se practicó la mensura estaba en posesión Zamorano del terreno que se reclama; que la mensura la practicó por orden del Señor Comisionado del Interior y no citó al Sr. Zamorano para el levantamiento del plano porque como en el departamento están los documentos de la propiedad insular y federal y la parcela pertenece al Gobierno se hizo el replanteo de acuerdo con esos documentos y no creyó necesario citar al Sr. Zamorano por no creer que fuera una propiedad particular y si del Gobierno. A preguntas del Sr. Juez Contestó: que el motivo de no citar al Sr. Zamorano fué porque aparecía la parcela como propiedad del Gobierno y así aparecía en el departamento; que sabía que el demandado Zamorano estaba en posesión del terreno porque varias veces había hablado con él, y que el terreno estaba cercado.

"A repreguntas del demandado contesta el testigo: que además de la cerca existe allí una casita de madera dentro de un solar cercado."

Al ser ofrecido el plano como prueba no se promovió ninguna cuestión respecto a la debida identificación del mismo, no hay ninguna cuestión envuelta en cuanto a las colindancias y en tanto aparece de los autos el único objeto de la presentación del plano como prueba o para lo que podía servir era para explicar la declaración del testigo últimamente citado como ayuda en la identificación y localización de la parcela en cuestión sobre el terreno. No hay nada que indique que se confió en el documento como prueba de título en el demandante y no podemos ver por qué la mera omisión en recurrir al procedimiento descrito en el artículo 286 del Código de Enjuiciamiento Civil en la fecha en que se volvió

a hacer la mensura ha de convertir el plano en inadmisible, ni tampoco el alegato del apelante proporciona gran luz sobre los méritos de la cuestión de tal modo promovida.

Verdaderamente que los autos en conjunto demuestran de modo concluyente que el demandado creyó desde el principio que la propiedad que se trataba de reivindicar era la descrita en la demanda original; y en el párrafo quinto de la demanda enmendada como comprendida en la parcela de mayor cabida cuya descripción se trató de hacer en el segundo párrafo de la alegación referida en último término.

Los artículos 136, 137 y 142 del Código de Enjuiciamiento Civil prescriben lo siguiente:

"Art. 136.—Ninguna incongruencia entre las alegaciones y las pruebas en un juicio se tendrá por esencial, a menos que por su índole y efectos dé lugar a que la otra parte incurra en su perjuicio, en falsas apreciaciones al mantener su demanda o su contestación. Siempre que una de las partes resultare así equivocada, la corte podrá disponer que se enmiende la alegación en los términos que estimare justos.

"Art. 137.—Cuando la incongruencia no fuere esencial, según lo previsto en el precedente artículo, la corte podrá resolver que el hecho se admita de acuerdo con la prueba, o disponer una enmienda inmediata sin costas."

"Art. 142.—En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto.

"Cuando una enmienda es de tal naturaleza que debió haber sido permitida por la corte inferior en bien de la justicia substancial, o al ser solicitada, la sentencia apelada no será revocada por razón de defectos u omisiones en la demanda que estén subsanados por las alegaciones, o la prueba de la parte contraria, o por existir incongruencia inmaterial entre las alegaciones y la prueba, a falta de la oportuna impugnación a la suficiencia de tal demanda, o si la prueba en cuestión fué presentada sin objeción, o resultare plenamente que el demandado no ha sido perjudicado en ningún derecho substancial debido a tal defecto u omisión." Nota al caso *Ellinhouse* v. *Ajax Live Stock Co.*, L. R. A. 1916, D., p. 843.

Una excepción previa a la demanda enmendada alegaba falta de hechos suficientes para constituir una causa de acción y la indebida acumulación de dos causas de acción distintas.

La omisión en hacer partes demandadas a Patricio Zamorano y Guillermo García Mayo se alega en el alegato como la supuesta falta de hechos. El demandado no hizo gestión alguna para que estas partes fuesen incluídas. No hay nada que demuestre que ellos son partes necesarias o siquiera partes adecuadas. El demandado como vendedor aparente de uno y comprador de otro completó la cadena de traspasos y si él los hubiera citado de evicción, ellos, en cambio, podrían haberle citado en el mismo carácter. Cualquier interés que hubieran podido tener ya en el título de dominio, en las inscripciones en el registro o en la propiedad misma, quedó extinguido por el traspaso al demandado y la inscripción a su nombre. No es necesario que consideremos la clara distinción que existe entre un defecto de partes y una falta de hechos suficientes para constituir una causa de acción como fundamento de excepción previa.

En apoyo de la alegada indebida acumulación de acciones se sostiene por el apelante que puesto que los títulos tanto del demandante como del demandado se derivan del mismo origen y el derecho a reivindicar surge de la "nulidad" del título del demandado, la acción reivindicatoria debe ser anterior a la "acción de nulidad." Esta cuestión no es cosa nueva (*res nova*) en esta corte. *Oliver* v. *Oliver*, 23 D. P. R. 181; *Fulladosa* v. *Castro*, 27 D. P. R. 702. Véanse también los casos de *Ortiz* v. *Texidor*, 27 D. P. R. 134; *Amy* v. *Amy*, 15 D. P. R. 415; Pomeroy Code Remedies, Edición 4ª., págs. 55–64. *Pueblo ex rel Love, Attorney General* v. *Center*, 66 Cal. 551; *Angus* v. *Craven*, (1901) 132 Cal. 691, 64 Pac. 1091, citado en Pomeroy Code Remedies; *Cobe* v. *Crane*, (1916) 173 Cal. 116; *Holland* v. *Hotchkiss*, (1912) 162 Cal. 366; *Davis* v. *Cramp*, (1912) 162 Cal. 503; *Wolf* v. *Gall*, (1916) 174 Cal. 140; *Hyatt* v. *Colins*, (1917) 174 Cal. 580.

En este caso El Pueblo de Puerto Rico derivaba el título

de España por conducto de los Estados Unidos y tal título no depende para su validez de la nulidad de un título en el demandado más o menos defectuoso. El pretendido traspaso original, del dominio al demandado era absolutamente nulo y cualquier valor que los sucesivos eslabones en esta cadena pueda tener como evidencia de título si en ella se fundara cualquier tercero de buena fé en manos del demandado no prueba nada. Siendo absoluta la nulidad del título de ·dominio, un pronunciamiento en este sentido y la cancelación de las inscripciones defectuosas son meros resultados incidentales de los hechos alegados y establecidos en la acción reivindicatoria. El Gobernador General no tenía más poder para traspasar el título a la parcela en cuestión que el que tenía, o el que tiene hoy el actual gobernador, o el coronel del regimiento para enajenar el castillo de ''San Gerónimo'' o el ''Morro.''

El demandado, Teniente de Voluntarios en la fecha de la primitiva adquisición hecha por él debió haber sabido esto y lo que hemos dicho sobre este punto resuelve también la cuestión de prescripción adquisitiva, pues sin justo título no habría términos hábiles para la prescripción ordinaria.

Se queja también el apelante de la negativa para que se hiciera parte el Gobierno Español en el litigio pero no cita ninguna autoridad para demostrar la facultad de la corte en este particular:

"El principio que ha de deducirse de los casos en que la cuestión de jurisdicción que las cortes de un país tienen de una acción contra otro país o el soberano de otro país es que como consecuencia de la absoluta independencia de toda autoridad soberana, y de las cortesías internacionales que induce a cada Estado soberano a respetar la independencia y dignidad de cualquier otro Estado soberano, cada Estado declina el ejercicio por medio de sus cortes de la jurisdicción de la acción contra cualquier otro Estado, o sobre la persona de cualquier soberano de otro Estado o sobre la propiedad de cualquier otro Estado aunque tal soberano o propiedad esté dentro de su territorio, y por tanto, a no ser por el convenio común, sujeto a su jurisdicción.'' 7 R. C. L. 1037, 68.

Las otras cuestiones discutidas en el alegato no requieren seria consideración.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.