[Civ. No. 3632.   Second Appellate District, Division Two.—April 3, 1922.]

CAMBRIDGE COMPANY (a Corporation), Appellant, v. CITY OF ELSINORE (a Municipal Corporation), Respondent.

[1] CONTRACTS—EMPLOYMENT OF ENGINEER—ASSIGNMENT OF FEES—QUANTUM MERUIT.—Where an engineer is employed by a city to supervise the installation of a sewer system under an express contract which provides that he is to receive as compensation for his services "a total fee" amounting to eight per cent of the money received from a certain bond issue, after a full and faithful performance by him of all the agreed services, a person to whom said engineer has assigned the right to "such fees as may be due . . . under the terms of said contract to be paid . . . when said contract has been properly fulfilled" cannot recover on a *quantum meruit* against said city the reasonable value of said engineer's partially performed services.

APPEAL from a judgment of the Superior Court of Riverside County. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

G. R. Freeman for Appellant.

Sarau & Thompson for Respondent.

FINLAYSON, P. J.—This is an action upon a *quantum meruit*, brought by plaintiff, as assignee of the rights of one Frank A. Lathrop, to recover from the city of Elsinore the sum of $1,680. This sum the complaint alleges to be the reasonable value of services which it is claimed were performed for defendant by Lathrop under a written contract whereby Lathrop was employed as consulting, designing and supervising engineer in the installation of a sewer system for the city. Lathrop assigned his rights to one W. E. Stowell, and she in her turn assigned to plaintiff. Judgment passed for defendant, and plaintiff appeals.

Lathrop's employment by the city was under an express contract in writing, executed by him and defendant on March 8, 1911. This contract, after reciting that the city officers

intend submitting to the qualified voters the question of the issuance of bonds for the construction of a sewer system and to cause such system to be built when the necessary bonds should be authorized and sold, declares that the defendant "hereby engages and employs the said Frank A. Lathrop to act as the consulting, designing and supervising engineer of the said improvement." Following this are certain promises on the part of Lathrop to perform certain specified services for defendant, some to be performed by him before, and some after the issuance and sale of the sewer bonds. The contract was entire, and not severable. Under its terms Lathrop was not to receive any pay until after a full and faithful performance of all of the agreed services. It expressly declares, after enumerating the services that Lathrop is to perform, that "said Frank A. Lathrop agrees . . . to forfeit all claim to the fee hereinafter specified, if the work undertaken [the work of constructing the proposed sewer system] cannot be completed in a thoroughly proper and workmanlike manner, in full accord with the plans and specifications, and within the estimated cost." Then follows a promise on the part of the city to pay Lathrop for his services, the city agreeing, "within forty days after the completion and acceptance of the construction of that portion of the system provided for by the initial bond issue, to pay to the party of the second part [Lathrop], as compensation for the services herein specified, a total fee amounting to eight per cent of the money received from the sale of the said bond issue."

In the year 1911 an election was held at which the question of the issuance of bonds to pay for the construction of the proposed sewer system was submitted to the qualified electors of the city. The affirmative of the proposition failed to receive the necessary number of votes. Nothing further was done until October 28, 1912, when, the matter of the issuance of bonds to meet the cost of the contemplated sewer system being again agitated, the city's board of trustees adopted a resolution whereby it was resolved that "the construction of a sewer system by the city of Elsinore be started at once, and that Mr. Lathrop be continued as engineer of the contemplated works." By thus voting to "continue" Lathrop as engineer in the construction of the contemplated sewer system, defendant, in effect, continued the employment that

was evidenced by the written contract of March 8, 1911. Indeed, plaintiff's complaint is drawn upon the theory that the services, the reasonable value of which it is seeking to recover, are services that were rendered by Lathrop under his employment of March 8, 1911, continued by the board's resolution of October 28, 1912. Subsequent to such continuance of Lathrop's contract of employment, the issuance of bonds again was submitted to the electors. At this election a bonded indebtedness in the sum of $20,000 for the construction of the first unit of the proposed sewer system was authorized, and the bonds were sold for $21,000, eight per centum of which ($1,680) is the amount sued for here.

The record before us is most unsatisfactory. It leaves many important facts in complete obscurity. It consists, in the main, of colloquies between court and counsel during arguments upon objections to evidence. [1] It seems to be conceded, however, that Lathrop did not substantially perform the services which he agreed to render under his written contract of employment, and that, therefore, there can be no recovery upon his express contract with defendant. But this notwithstanding, appellant claims that under the doctrine of such cases as *Jones etc. Co.* v. *Doble Co.,* 162 Cal. 497 [123 Pac. 290], *Katz* v. *Bedford,* 77 Cal. 322 [1 L. R. A. 826, 19 Pac. 523], and *Castagnino* v. *Balletta,* 82 Cal. 250 [23 Pac. 127], it is entitled to recover, upon an implied contract, the reasonable value of such services as Lathrop did perform. These cases enunciate the well-established rule that where one who agrees to perform services acts with a *bona fide* intention of fulfilling his contract, but fails strictly to do all that he has agreed to, he may, nevertheless, recover on a *quantum meruit* the reasonable value of the labor actually done by him, if the services performed were beneficial to the other party to the contract and have been accepted and enjoyed by the latter.

Appellant is met at the threshold with the objection that the assignment from Lathrop to Mrs. Stowell did not convey any right that Lathrop may have had to recover upon an implied contract to pay the reasonable value of partially performed services. The assignment to Mrs. Stowell, contained in a written communication sent by Lathrop from Los Angeles, dated April 21, 1913, and addressed to defendant's board of trustees, reads:

"Mr. President and Members of the Board of Trustees of the City of Elsinore, California,—

"Gentlemen: In consideration of the fact that W. E. Stowell of 2694 West 9th Street, this city, has kindly consented to make, has and is making all such expenditures as have been and may become necessary after April 1st, 1913, to enable me to properly fulfill my contract with your city, dated March 8th, 1911, on the engineering for a Sanitary Sewer System for your city, I hereby, with your permission, sell, assign and set over to said W. E. Stowell all of such fees *as may be due me under the terms of said contract,* to be paid to said W. E. Stowell when said contract has been *properly fulfilled* by me, according to the terms of said contract. This assignment will not result in any change in the services to be performed by me as stipulated in the said contract, as I will continue in the future, as I have in the past, to personally carry out said contract in full accord with its terms. I will greatly appreciate an official notification, at your earliest convenience, by your Honorable Body, to said W. E. Stowell, at 2694 West 9th Street, Los Angeles, Cal., that this assignment has been accepted by you.

"Yours very truly,
"FRANK A. LATHROP."

(Italics ours.)

At a meeting of the city's board of trustees, held May 5, 1913, the assignment was "accepted" by the board and the document was filed with the clerk.

The assignment is not an attempted assignment of money then due to Lathrop, as is contended by respondent in one part of its argument. It is an assignment of the "fee" (eight per cent of such money as might be derived from the sale of the bonds) which the city, in its written contract of March 8, 1911, agreed to pay to Lathrop "within forty days after the completion and acceptance of the portion of the [sewer] system provided for by the initial bond issue." It is, therefore, an assignment of a "fee" to be earned by Lathrop's future services as well as by those already rendered by him. It is the assignment of a "fee" that was not to become due until some time after its assignment to Mrs. Stowell, i. e., on the completion and acceptance of the initial unit of the sewer system.

Assuming, for the purpose of this decision, that if Lathrop had made no assignment he could have recovered the reasonable value of his partially performed services, appellant's right to recover therefor depends entirely upon the nature and extent of the right which Lathrop assigned to Mrs. Stowell, appellant's assignor. It will be noted that Lathrop did not assign to Mrs. Stowell his contract with respondent. Nor did he assign to her whatever moneys might be due or become due to him for any services that he might perform for the city under his employment. The only right assigned to Mrs. Stowell is the right to the "fee" that was to be earned by the complete performance of Lathrop's contract. The assignment to her is an assignment of a specific, well-defined, and definite right, namely, the right to "such fees as may be due me, *under the terms of said contract,*" i. e., under the terms of Lathrop's written contract of March 8, 1911, with the city. Further, the assignment fixes the time and the condition of payment to Mrs. Stowell as follows: The "fees" are "to be paid to said W. E. Stowell when said contract has been *properly fulfilled* by me, according to the terms of said contract."

In the construction of assignment the main object is to ascertain the intention of the parties, as in the case of any other contract. This intention is to be derived from a consideration of the whole instrument, and is to be sought in the words and language employed; and if the words are free from ambiguity and express plainly the purpose of the instrument, there is no occasion for interpretation. (5 C. J., p. 943. See, also, *Lynip* v. *Alturas School Dist.*, 24 Cal. App. 426 [141 Pac. 835].) Courts cannot correct suspected errors, omissions, or defects, or by construction vary the contracts of parties. If the words of an assignment convey a definite meaning, and there is no contradiction or ambiguity, then the apparent meaning of the instrument must be regarded as the one intended. (*Schoonmaker* v. *Hoyt*, 148 N. Y. 425 [42 N. E. 1059].)

This assignment needs no construction to ascertain its meaning and scope. It clearly, unambiguously, and with certainty speaks for itself. As plainly as language can express any proposition, it provides that Lathrop's assignee is to have such "fees" as may become due "under the terms of said contract"—i. e., under the terms of Lathrop's contract

with this defendant; also that such "fees" are to be paid to Lathrop's assignee when "said contract has been properly [i. e., completely] fulfilled by me, according to the terms of said contract." Every word of the document manifests the intention to make the vitality of the assignment depend upon the fulfillment by Lathrop of his contract with the city. It must have been so understood by all the parties to the transaction. The assignment was made in the course of a written communication addressed by Lathrop to the president and members of the city's board of trustees, whereby the latter were requested to "accept" the assignment. Nothing could be clearer than that, by the language of the writing, the defendant's board of trustees "accepted" the assignment upon the understanding that it was to be restricted in its operation to such "fee" as would become due only upon a complete performance of all the promises made by Lathrop in his written contract with the city, and upon the happening of every contingency which that contract made a condition precedent to the payment of the fee. This being so, we are of the opinion that, as the assignee of Mrs. Stowell, plaintiff acquired no right other than the right to such "fee" as might become due to Lathrop under the terms of his express contract with defendant; and that, as Lathrop never became entitled to such fee, he having failed substantially to perform his contract, it follows that plaintiff cannot recover on a *quantum meruit* the reasonable value of Lathrop's partially performed services—the right thereto, if any there be, not having passed out of Lathrop under his assignment to Mrs. Stowell. For these reasons the judgment must be and is affirmed.

Works, J., and Craig, J., concurred.