[Civ. No. 13575.   Second Dist., Div. Two.   Aug. 21, 1942.]

GEORGE W. BROOKS et al., Respondents, v. FIDELITY SAVINGS AND LOAN ASSOCIATION (a Corporation) et al., Defendants; PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation) et al., Appellants.

George S. Dennison and W. G. Harmon for Appellants.

Charles R. Holton, Paul G. McIver and Burke, Hickson, Burke & Marshall for Respondents.

GOULD, J. pro tem.—Plaintiffs on or about February 3, 1928, borrowed from Fidelity Savings & Loan Association $15,000, payable at the rate of $210 per month with interest at 8.4 per cent per annum, secured by deed of trust upon a 13-unit bungalow court property owned by them at Montebello, California. Soon thereafter an additional borrowing of $1,500, secured by the same trust deed, increased the indebtedness to a total of $16,500. In June, 1935, the unpaid principal balance upon the indebtedness amounted to $11,118.56, and interest was owing from December 5, 1934. Before that date Fidelity assets were transferred to defendant Pacific States Savings & Loan Company, and negotiations hereinafter referred to for the settlement of said indebtedness were had between plaintiffs and officers or agents of defendant Pacific States Company.

In the early months of 1935 several proposals back and forth, looking to the settlement of the indebtedness, were submitted, and finally on June 25, 1935, it is alleged and so found by the trial court to be a fact, Pacific States accepted a proposition made by the owners to take the sum of $10,000 cash in full payment and settlement of the entire obligation, then amounting to more than $12,500. A letter to this effect was written by Pacific States, and plaintiffs proceeded to open an escrow to complete negotiations theretofore pending to borrow $7,500 upon the same property from the Reconstruction Finance Corporation and to raise an additional $2,500 by borrowings upon life insurance policies and from other sources, as well as to expend money in surveys, insurance policies, escrow fees and other necessary disbursements for refinancing said property.

The loan from the Reconstruction Finance Corporation was approved by that agency September 27, 1935, and, so plaintiffs alleged, they were ready, able and willing to complete the transaction and to carry out their contract with Pacific States by paying the $10,000 to satisfy the note and trust deed held by the latter. Pacific States, however, never became a party to the escrow, but by a letter dated October 23, 1935, refused to proceed unless plaintiffs would pay $11,000. Plaintiffs did not acquiesce in this demand for $1,000 additional, and Pacific States thereupon proceeded with the foreclosure of its trust deed, and pursuant to a sale had in such proceedings purported to bid in said property and take title thereto, at the same time foreclosing a chattel mortgage upon the furniture and furnishings of said bungalow court, held as additional security for said indebtedness. After the sale Pacific States took possession of the property and proceeded to administer it as its own, placing a manager in charge, renting and collecting rents, paying expenses of upkeep, taxes, insurance and other costs.

The present litigation was initiated by a complaint filed November 14, 1935, asking that defendants be required to specifically perform the contract of June 25, 1935, by which it was charged they agreed to accept the sum of $10,000 for their liens, and also that the foreclosure sale, then pending, be enjoined. Demurrer was filed and sustained. An amended complaint was filed, to which a demurrer alleging failure of consideration for said alleged contract of June 25 was sustained, and, plaintiffs refusing to amend, the court entered

an order dismissing the complaint. Upon appeal the District Court of Appeal, in *Brooks* v. *Fidelity etc. Assn.*, 26 Cal. App. (2d) 114 [78 P. (2d) 1175] (hearing denied by the Supreme Court), reversed the judgment of dismissal, holding that the facts alleged in the amended complaint did constitute sufficient consideration for the agreement sought to be specifically enforced, and that said complaint did state facts sufficient to constitute a cause of action. As stated by the court in that case: ''Under the facts pleaded in the complaint it would appear that the respondents had considerable time to act, during which they had the right of election of availing themselves of selling the property, or of accepting the sum of $10,000 in full satisfaction. Weighing all of the conditions then existing—a depressed market for real property, the value of ready cash, the scarcity of bidders at foreclosure sales due to financial conditions which then existed in the general business depression, defendants may have preferred an agreement for the payment of $10,000 in cash rather than to take over the real property on foreclosure. It is also alleged that plaintiffs expended money and time in procuring the consent of the Reconstruction Finance Corporation to advance the money, something plaintiffs were not called upon to do by the terms of their note. We believe that sufficient consideration did exist for the execution of the agreement, and on that issue the complaint stated a cause of action.''

Upon return to the superior court pleadings were brought down to date by amended and supplemental complaints, in which the State Building and Loan Commissioner, who had taken charge of defendant Pacific States, was made a party defendant, and in which accounting was asked of defendants for their administration of the property during the several years they had held it after the foreclosure sale. Issue finally was joined upon a third amended and supplemental complaint and answers thereto. Upon trial plaintiffs prevailed. The trial court ordered that the property be returned to plaintiffs upon their payment of the agreed $10,000, and against this sum credit was allowed in the amount of $9,829.04, which it was found represented the rents, issues and profits received by defendants from the operation of the bungalow court during their long period of possession, less certain sums allowed for operating and maintenance expenditures. As a net result it was decreed that plaintiffs recover back their property, free from any lien or claim of defen-

dants, upon the payment to defendants of the sum of $170.96, less plaintiffs' trial costs and such sums as might become due between the date of judgment and the final delivery of the property to plaintiffs. Defendants appeal.

Most of the questions involved herein are disposed of by the determination of the former appeal, coupled with the findings of the court upon the trial presently appealed from.

In the former appeal it was held—and this must be accepted as the law of the case—that a consideration was pleaded sufficient, if found to be true, to uphold a judgment decreeing specific performance. Upon the trial of the instant action the court, upon abundant evidence, found favorably to respondents in every particular—that "there was a good, sufficient, valuable, adequate and valid consideration," and that "the contract . . . was fair, adequate, just, equitable and reasonable." It was further found that respondents were ready, able and willing to comply with said agreement for the payment of $10,000, and so notified appellants within a reasonable time; that respondents duly tendered said money to appellants about October 15, 1935, but that such tender was refused "without just or lawful reason or excuse."

While no time for the payment of the $10,000 was indicated in the writing or agreement of June 25, 1935, appellants contend that they were justified in withdrawing their offer and proceeding with the foreclosure after waiting six weeks. No time being specified, it follows that a reasonable time must be allowed. (*Jones & Laughlin Steel Co.* v. *Abner Doble Co.*, 162 Cal. 497 [123 Pac. 290].) It was known to appellants that the money to pay them would be obtained from a new loan to be placed on the property by the Reconstruction Finance Corporation, and the delays in dealing with that agency were known to all parties equally well. It was with knowledge of the proposed source of the money to pay off appellants that the contract was entered into, all details of the negotiations as they progressed were disclosed to appellants, and it must be held that the contract was entered into in contemplation of the facts within the knowledge of the parties existing at the date of the agreement. (*Giberson* v. *Fink*, 28 Cal. App. 25 [151 Pac. 371].) The court found that respondents proceeded diligently and in good faith, and its conclusion that the time elapsed was reasonable appears to be justified and to be amply supported by the record.

██ When an accounting was undertaken between the parties for the time during which the property was in the possession of appellants, respondents, as was their right, chose to require appellants to account for the actual money received in the use of the property, rather than to recover for the fair value of its use for that period. ██ Although respondents never paid the $10,000 to appellants nor deposited it to the latters' credit, and in fact never suffered any loss or detriment in connection therewith except the preliminary incidental expenditures in soliciting the loan from the Reconstruction Finance Corporation, the court refused to charge them with any interest upon the $10,000, although appellants were required to account for the rents, issues and profits of the bungalow court during the entire period. The court's action must be sustained as proper in the circumstances. Having determined that there was a valid tender made in good faith on October 15, 1935, such tender, under well established law, when unjustifiably refused, placed appellants in default, permitted respondents to exercise their remedies for breach of contract, stopped interest running—in fact, stopped all the incidents of the original obligation—and left only the original obligation itself, shorn of all its incidental burdens. (Civ. Code, § 1504; *Walker* v. *Houston*, 215 Cal. 742 [12 P. (2d) 952, 87 A. L. R. 737]; *Lockhart* v. *J. H. McDougall Co.*, 190 Cal. 308 [212 Pac. 1].) Appellants call our attention to decisions holding a contrary doctrine in other states, but there can be no doubt that in California it is settled that a valid tender stops the running of interest upon the debt.

██ There remains for consideration the allowance or disallowance of various specific items in the accounting. Without reviewing the entire accounting in detail it is sufficient to say that generally the court's findings are to be approved. The total receipts from the operation of the bungalow court from December 14, 1935, when appellants took possession, until February 28, 1941, amounted to $21,147.04. Against this the court allowed expenditures for maintenance, operation and upkeep and payment of necessary charges against the property totalling $11,318, all of which in our opinion were proper deductions. Certain other items for which credit was asked by appellants were, we believe, improperly disallowed by the court. These were as follows:

Salary of apartment house manager..............$1,072.83
Social Security for employees....................  102.17
Workmen's Compensation ......................  21.12
Fire insurance premiums ......................  469.27
Bond premiums ................................  40.13

$1,705.52

We see no valid reason why these expenditures, proper and necessary in the operation of the property, were not allowed as credits to appellants.

The judgment and findings are therefore modified to provide such additional credits to appellants and to decree that the amount to be paid by respondents to appellants shall be changed by the addition thereto of said sum of $1,705.52, said amount being fixed at $1,876.48 instead of $170.96. Otherwise the judgment is in all respects affirmed. Appellants to recover costs.

Moore, P. J., and Wood (W. J.), J., concurred.